UNITED STATES of America, Appellee,

v.

Robert J. PRENDERGAST,
Jr., Appellant.

No. 91–3637.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1992.

Decided Nov. 6, 1992.

Michael F. Gutowski, Omaha, Neb., for appellant.

Robert F. Kokrda, Asst. U.S. Atty., Omaha, Neb., for appellee.

Before WOLLMAN and HANSEN, Circuit Judges, and ROY,* Senior District Judge.

HANSEN, Circuit Judge.

## I.

Robert J. Prendergast, Jr., a stockbroker, was charged with devising a scheme to sell fraudulent promissory notes over interstate phone lines in violation of 18 U.S.C. § 1343. The United States Attorney's Information specifically charged him with selling promissory notes totalling approximately $280,000 to three individuals: William A. North ($80,000); Clarence O. Romans ($50,000); and Charles L. Watson ($150,000). Prendergast fully repaid North, but he still owes Romans $50,000 and Watson $120,000. Although not listed in the charging Information, Prendergast also defrauded two additional investors:

Rex McKain ($30,000) and Prochaska and Associates (Prochaska), a company based in Omaha, Nebraska ($674,341). He still owes McKain the entire $30,000. He also owes $213,000 to Prochaska.

The Douglas County Attorney, in Omaha, Nebraska, charged Prendergast with four state counts of theft by deception involving the Prochaska transactions. He pled guilty and was sentenced on May 16, 1991, to an 18 month term of imprisonment for each count to be served concurrently.

Prendergast pled guilty to the federal wire fraud charge on April 22, 1991. On October 21, 1991, after the defendant had been sentenced in state court, the district court sentenced Prendergast to an 18 month term of imprisonment to be served consecutively to the state sentence. Prendergast appeals the specific terms and conditions of his federal sentence.

## II.

For the purposes of sentencing, the district court calculated the amount of loss based on the actual harm (net loss) caused to North, Romans and Watson. Because Prendergast had reimbursed in whole or in part these three individuals, the district court found the amount of loss to total $170,000, which is the amount of money that Prendergast still owes the three individuals. This finding translated into a seven-level increase, which when added to a base offense level of six, resulted in an offense level of 13. *See* U.S.S.G. § 2F1.1(b)(1) (Nov. 1990). The district court then awarded a two-level increase in the offense level after finding that Prendergast's scheme involved more than minimal planning or a scheme to defraud more than one victim. *See* U.S.S.G. § 2F1.1(b)(2). After finding that Prendergast was entitled to a two-level decrease for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, the court determined the total offense level was 13. Because of his state court convictions for the Prochaska transactions, Prendergast had a criminal

---

* The Honorable Elsijane T. Roy, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

history category II. Based on these factual findings, the applicable sentencing range was 15 to 21 months. The district court sentenced Prendergast to an 18 month term of imprisonment to be served consecutively to the state sentence.

Unlike most defendants charged with fraud who take a narrow view of relevant conduct, Prendergast argues that the district court incorrectly applied the sentencing guidelines by refusing to include the uncharged amount of the net loss to McKain ($30,000) and Prochaska ($213,000) in the calculation of the offense level under U.S.S.G. § 2F1.1(b)(1). He contends that these transactions do constitute relevant conduct pursuant to U.S.S.G. § 1B1.3 and therefore should have been included in the loss calculation. As pointed out in his brief, he takes this position to support his argument for concurrent state-federal sentences and for a lower criminal history category. *See* U.S.S.G. § 4A1.2(a)(1) (prior sentence for criminal history calculation does not include prior convictions for conduct that is part of the instant offense).

In deciding not to include the additional $243,000 in the loss calculation, the district court relied on the panel opinion in *United States v. Galloway*, 943 F.2d 897 (8th Cir. 1991) (*Galloway I*), *vacated* (8th Cir.1991), which was binding precedent at the time of Prendergast's sentencing. In *Galloway I*, a panel of this court held that with regard to uncharged separate property offenses, the Sentencing Commission exceeded its statutory authority in promulgating the relevant conduct guideline, § 1B1.3. In accordance with this holding, the district court concluded that the McKain and the Prochaska transactions were sufficiently analogous to "separate property crimes," and refused to include these additional transactions in the loss calculation.

■ The determination of whether uncharged conduct was part of the "same course of conduct or common scheme or plan as the offense of conviction," and therefore constitutes relevant conduct under U.S.S.G. § 1B1.3, is a factual determination subject to review under the clearly erroneous standard. *United States v.*

*Dennis*, 926 F.2d 768, 769 (8th Cir.1991). After thoroughly reviewing the record and with the benefit of the recent en banc decision in *United States v. Galloway*, 976 F.2d 414 (8th Cir.1992) (*Galloway II*), we conclude that the McKain and Prochaska transactions are within the defendant's relevant conduct for sentencing purposes. Prendergast pled guilty to selling fraudulent promissory notes over interstate phone lines during an eight-month period. The government specifically charged him with selling fraudulent notes to three individuals; Prendergast admits, however, that he also sold fraudulent notes during this same time period to McKain and Prochaska. In fact, Prendergast testified that he used some of the money obtained through the Prochaska transaction to pay other noteholders. The sales to McKain and Prochaska clearly involved a pattern of continuous conduct that is part of a common scheme or plan as the offense of conviction. *See Galloway II*. Therefore, the uncharged conduct involved in the McKain and Prochaska transactions constitutes relevant conduct under § 1B1.3.

■ As previously mentioned, the district court calculated the amount of "loss" based on the actual harm (net loss) caused to the individuals. The fraudulent notes to the three individuals named in the Information totalled $280,000. Because Prendergast repaid approximately $110,000 of this total, the district court concluded that the amount of "loss" was $170,000. Prendergast agrees with the district court that the amount of loss should be the "net loss." The "net loss" to McKain and Prochaska totalled $243,000, according to Prendergast. The actual value of the fraudulent notes originally sold to McKain and Prochaska, however, totalled approximately $704,000. Although the government did not raise this issue of the "loss" calculation on appeal, we are obligated to correct a misapplication of the guidelines and particularly so in this case when the defendant's position, that only the "net loss" should be included in the "loss" calculation, is contrary to the law in this circuit and the case is being remanded for resentencing. For

the following reasons, we conclude that the district court incorrectly applied the term "loss" under U.S.S.G. §§ 2B1.1 and 2F1.1.

In this circuit, "[t]he dollar value associated with defendant's conduct does not hinge upon actual loss." *United States v. Saunders*, 957 F.2d 1488, 1494 (8th Cir. 1992) (citing *United States v. Johnson*, 908 F.2d 396, 398 (8th Cir.1990)).[1] "In *Johnson*, this court determined that the defendant's offense level was 'to be determined by the total amount of the two bank loans,' and was not decreased by the amounts the banks were able to recover by repossessing the defendant's automobile and from one of the bank's insurance companies." *Id.* Additionally, in *United States v. Edgar*, 971 F.2d 89, 93 (8th Cir.1992), we held the amount of loss used to increase the offense level under the fraud guideline "may be either the amount of loss the defendant intended to inflict or the actual loss resulting from the fraudulent conduct, *whichever is greater.*" (emphasis added).

The focus for sentencing purposes under § 2F1.1 should be on the amount of possible loss the defendant attempted to inflict on the victim. *Johnson*, 908 F.2d at 398; *see also* U.S.S.G. § 2F1.1, comment. (n. 7) (1991); *United States v. Earles*, 955 F.2d 1175, 1178 (8th Cir.1992) (when victim's stop payment order prevented "actual loss," the amount of the fraudulently obtained check was nevertheless included for determining offense level).

Accordingly, at resentencing, the district court should recalculate the amount of the loss in accordance with the current law in this circuit.

### III.

The district court imposed the following special conditions of supervised release on Prendergast:

· 1. [Prendergast] shall not purchase, possess, use, distribute, or administer any alcohol, narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician.

2. [Prendergast] shall submit to such [drug] testing as any person involved in supervising the· defendant's supervised release may request to detect the presence of alcohol or controlled substances in the defendant's body fluids.

3. [Prendergast] shall be subject to search and seizure of the defendant's premises, vehicle or person, day or night, with or without a warrant, at the request of any person involved in supervising the defendant's supervised release to determine the presence of alcoholic beverages or controlled substances; any such person may make such a request with or without the cooperation of law enforcement officers.

Judgment Including Sentence at 16–17.

Prendergast contends that these provisions, which prohibit the purchase, possession, and the use of any alcohol and subject him to warrantless searches for alcohol and drugs at any time, are not reasonably related to the crimes to which he pled guilty or to the purposes for his sentence. He argues that the district court abused its discretion in imposing these special conditions of supervised release. We agree.

Although a sentencing judge is given wide discretion in imposing terms of supervised release, *United States v. Schoenrock*, 868 F.2d 289, 291 (8th Cir.1989) (citation omitted), the terms imposed must be "reasonably related to ... the nature and circumstances of the offense and the history and characteristics of the defendant, and

---

**1.** ·We note that the circuits are split on this issue of the definition of "loss" under U.S.S.G. § 2F1.1. Several circuits define "loss" as the total value of the property that was actually taken. *See United States v. Arjoon*, 964 F.2d 167, 172 (2d Cir.1992); *United States v. Cockerham*, 919 F.2d 286, 289 (5th Cir.1990); *United States v. Joetzki*, 952 F.2d 1090, 1096 (9th Cir. 1991); *United States v. Rayborn*, 957 F.2d 841, 844 (11th Cir.1992). In contrast, several other circuits define "loss" as the "net loss," or the actual harm caused to the victims. *See United States v. Kopp*, 951 F.2d 521, 535–36 (3d Cir. 1991); *United States v. Bailey*, 975 F.2d 1028, 1031 (4th Cir.1992); *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir.1990); *United States v. Schneider*, 930 F.2d 555, 559 (7th Cir.1991); *United States v. Smith*, 951 F.2d 1164, 1167 (10th Cir.1991).

[to] ... the need ... to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." U.S.S.G. § 5D1.3(b) (Nov. 1990). *See also* 18 U.S.C. § 3583(d) (conditions of supervised release); *United States v. Smith*, 972 F.2d 960 (8th Cir.1992). Moreover, the terms of supervised release must not involve a "greater deprivation of liberty than is reasonably necessary" to effectuate the goals of Congress and the Sentencing Commission. 18 U.S.C. § 3583(d)(2). "[C]onditions that restrict a probationer's freedom must be especially fine tuned." *United States v. Tolla*, 781 F.2d 29, 34 (2d Cir. 1986).

█ Upon review of the record, we conclude that these special conditions of supervised release imposed on Prendergast do not reasonably relate to the goals of rehabilitation and protection. Prendergast pled guilty to the crime of wire fraud. There is no evidence indicating that Prendergast suffers from alcoholism or that the use of alcohol in any way contributed to the commission of the offense for which he was sentenced. The district court failed to make any specific findings that alcohol was a contributing cause of his crime or that the defendant otherwise is in need of any substance abuse rehabilitation. Furthermore, there is no evidence that the defendant used the fraud proceeds for drug activity. There is evidence that the defendant has a gambling habit which does need to be addressed as part of his supervised release, and the district court has done so. *See* Additional Conditions of Supervised Release No. 3, Designated Record at 16. The district court failed to explain any relationship between the wire fraud offense and the supervised release provision permitting warrantless searches for drugs or controlled substances. We see no reasonable relationship, and are of the view that the district court abused its discretion in

imposing these special conditions of supervised release. On remand, the district court shall amend the conditions of supervised release by eliminating the provisions concerning the total prohibition on all alcohol and the warrantless searches for alcohol and drugs. We leave to the district court's discretion whether or not the recommended standard condition of supervised release number 7 found in U.S.S.G. § 5B1.4(a) ("the defendant shall refrain from excessive use of alcohol....") should be imposed upon resentencing.

### IV.

█ The district court, at the time of sentencing, determined that Prendergast did not have the present financial ability to pay restitution. In light of the possibility that he could later develop an ability to pay it, however, the district court stated that the issue of restitution would remain open. Prendergast argues that the district court abused its discretion in leaving open this question of restitution until a future date. We agree.

"There is no statutory or other provision that authorizes a sentencing court to leave the question of restitution open to an uncertain date." *United States v. Sasnett*, 925 F.2d 392, 399–400 (11th Cir.1991). Furthermore, the plain language of 18 U.S.C. § 3663(a)(1)[2] indicates that if the court elects to impose restitution, it must be ordered at the time the defendant is sentenced. *Id.* at 400. On remand, the district court must determine what amount of restitution, if any, Prendergast must pay as a condition of supervised release. *See e.g., United States v. Johnston*, 973 F.2d 611, 614 (8th Cir.1992).

### V.

█ The district court sentenced Prendergast to an 18 month term of imprisonment sentence to be served *consecutively* to the state sentences. Prendergast argues that the district court abused its dis-

---

**2.** 18 U.S.C. § 3663(a)(1) provides that "[t]he court, *when sentencing a defendant* ... may order, in addition to or, ... in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." (emphasis added).

cretion in imposing a consecutive sentence. Instead, Prendergast contends that his federal sentence should have been made to run concurrently with the state sentences. We disagree.

The Sentencing Guidelines applicable at the time Prendergast was sentenced provided the district court with the discretion to impose a sentence that runs consecutively to or concurrently with a defendant's unexpired term of imprisonment. Because Prendergast was sentenced on October 21, 1991, the 1990 Sentencing Guidelines applied to the proceeding. Under the Commentary to § 5G1.3 (1990), the sentencing judge has broad discretion. "Where the defendant is serving an unexpired term of imprisonment, but did not commit the instant offense while serving that term of imprisonment, the sentence for the instant offense *may be imposed to run consecutively or concurrently* with the unexpired term of imprisonment." U.S.S.G. § 5G1.3, comment. (backg'd.) (Nov. 1990) (emphasis added). Therefore, the district court did not, at the time Prendergast was sentenced, abuse its discretion. We note that U.S.S.G. § 5G1.3 has been amended. *See* U.S.S.G. § 5G1.3 (Nov. 1991). We leave to the district court the initial determination as to what effect the amendment, if applied, may have on the consecutive/concurrent/state/federal sentencing issue in this case. *See* 18 U.S.C. § 3553(a)(4), (5) (1988); *Edgar*, 971 F.2d at 93 n. 4.

## VI.

We vacate the defendant's sentence and remand to the district court for resentencing consistent with this opinion.