# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 99-2004 & 99-2009

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Eugene P. Kent, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: February 18, 2000

Filed: April 19, 2000

_____

Before McMILLIAN, LAY, and FAGG, Circuit Judges.

_____

LAY, Circuit Judge.

Eugene P. Kent appeals the district court's inclusion of a special condition to his three-year period of supervised release on the grounds that the condition was an abuse of discretion by the district court. Kent also urges that the district court improperly delegated his probation officer the authority to determine whether he must participate in a psychological or psychiatric counseling program. We reverse.

## I. BACKGROUND

On February 24, 1997, Kent was sentenced to twenty-seven months plus three years supervised release after being found guilty of two counts of mail fraud in violation of 18 U.S.C. § 1341. On May 18, 1998, Kent pleaded guilty to one count of attempting to cause a financial institution not to file a report required by 31 U.S.C. § 5313 in violation of 31 U.S.C. § 5324(a)(1). He was sentenced to five months incarceration to be served concurrently with his prior sentence of twenty-seven months, as well as a concurrent three-year term of supervised release. On March 23, 1999, the district court, upon motion of the government, filed an amended judgment adding two special conditions to Kent's supervised release. Specifically, the court ordered: (1) Kent shall have no contact, in person or otherwise, with his wife, Marijo Kent, unless Kent's probation officer approved such contact in advance and in writing; and (2) Kent "shall participate in an appropriate psychological/psychiatric counseling program as directed by his probation officer." (Am. J. at 3.1.) In this appeal, Kent challenges only the second special condition.[1]

At the hearing on the government's motion on March 15, 1999, Marijo testified she suffered physical, mental, and emotional abuse at the hands of Kent. She explained that she was fearful of Kent's anger upon his release from prison. She also informed the court that she had initiated divorce proceedings in January of 1998, but cancelled the court date two weeks later due to pressure from her children. The dissolution action was still pending at the time of the hearing, however. On cross-examination, counsel for Kent asked Marijo if she knew that South Dakota Statute § 25-4-33.1 provides that, upon filing for divorce, a temporary restraining order issues immediately

---

[1]At oral argument, counsel for the government stated that he believed Kent's probation officer requested the court remove the "no contact" condition after Marijo apparently voluntarily chose to have contact with Kent.

against both parties. Marijo expressed familiarity with the restraining order provision.[2] When asked whether Kent had disturbed her peace since filing, she recalled one 45-minute phone conversation occurring the month prior to the hearing. When asked on redirect examination whether she thought Kent was being abusive during the conversation, Marijo responded: "I don't know if you can term it abusive. It's just that he wears me down. He wears me out." (Tr. at 29.)

Marijo also specifically admitted that Kent had not physically abused or threatened her with abuse since 1986 at the latest. Upon being asked to recount instances of sexual abuse "in recent years," she alleged that Kent forced her to watch pornographic films against her will and awoke her in the middle of the night with sexual contact. The phrase "recent years" was not defined for the court other than to mean some time subsequent to 1985. Finally, Marijo conceded on cross-examination that Kent had not attempted to threaten, physically abuse, or inappropriately contact her since his release from prison a couple weeks earlier.

The government then called Connie Dawson, a mental health counselor at Children's Inn, a shelter where Marijo had spent some time. Dawson testified to her experiences with Marijo during counseling. Thereafter, the government called Krista Heeren-Graber, the operations director of Children's Inn, to testify about the general characteristics of abusers and their victims. Neither Dawson nor Heeren-Graber are psychiatrists or psychologists, and neither have met Kent or investigated Marijo's claims of abuse. The government provided no other testimony at the hearing.

---

[2]Marijo's testimony does suggest that she was somewhat confused about the purpose of the restraining order. In response to counsel's question, she stated: "I thought [the restraining order] meant that they couldn't destroy any of your personal belongings." (Tr. at 27.)

In granting the government's motion, the court recognized that while Kent probably did not present a danger to anyone other than Marijo, the temporary restraining order was insufficient to address all of the court's concerns. Therefore, "to afford deterrence to any potential criminal conduct on the part of [Kent]," (Tr. at 65), the court imposed the two special conditions. With regard to the psychiatric counseling requirement, the court clarified that the condition did not require Kent to undergo treatment immediately. The court explained: "I'm not ordering him into anything right now. I'm just saying if, during the course of supervised release it becomes necessary, then it will happen. And I'm not going to make the determination. The probation officer will." (Tr. at 67.) When asked whether Kent could move the court for reconsideration if he disagreed with the probation officer's determination, the court responded: "I don't hope to be riding herd on such questions, but if necessary, I will. But remember, the probation officer is my personal staff and I have confidence in them." (Id.)

## II. DISCUSSION

### A. Standard of Review

District courts are normally afforded wide discretion in imposing terms of supervised release. See United States v. Behler, 187 F.3d 772, 778 (8th Cir. 1999). Thus, this court reviews the district court's imposition of special conditions for an abuse of discretion. See United States v. Cooper, 171 F.3d 582, 585 (8th Cir. 1999).

### B. Sentencing Factors Under 18 U.S.C. § 3553(a)

Kent argues that the district court's special condition does not comport with the standards set out by Congress and the United States Sentencing Commission (Commission). In imposing a sentence, a court shall consider: (1) the nature and circumstances of the offense and the defendant's history and characteristics; and (2) the

need for the sentence to (A) reflect the gravity of the offense, promote respect for the law, and justly punish the defendant for the unlawful behavior, (B) adequately deter criminal behavior, (C) protect the public, and (D) effectively provide necessary educational or vocational training, medical attention, or other correctional treatment. See 18 U.S.C. § 3553(a)(1), (2)(A)-(D) (1998).  These factors are equally applicable considerations in the imposition of a term of supervised release under 18 U.S.C. § 3583(c), which expressly adopts each of the above-stated factors with the exception of (2)(A).  Section 5D1.3(b) of the United States Sentencing Guidelines Manual (U.S.S.G.), which also addresses conditions of supervised release, mirrors § 3583(c)'s adoption of § 3553(a).[3]  Furthermore, § 5D1.3(b) directs that the imposed conditions should not deprive the party of his or her liberty any more than is reasonably necessary to fulfill the purposes of Congress and the Commission.  See U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(b) (1998).  Finally, in order to impose the special condition of participation in a mental health program, the court must have reason to believe the party is in need of such treatment.  See  U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(d)(5) (1998).

In United States v. Prendergast, 979 F.2d 1289 (8th Cir. 1992), the defendant pleaded guilty to state counts of theft by deception and federal counts of devising a scheme to sell fraudulent promissory notes over phone lines in violation of 18 U.S.C. § 1343.  The court added special conditions to Prendergast's supervised release requiring him to abstain from using alcohol and other controlled substances and forcing him to submit to random drug testing and warrantless searches to determine the presence of alcoholic beverages or controlled substances.  This court concluded that

---

[3]We note that it is not necessary that all of the factors listed in § 5D1.3(b) be present in order to avoid a finding of abuse of discretion; rather, each are independent factors to be weighed.  The special condition imposed need not be related to each and every one of the factors.  See United States v. Johnson, 998 F.2d 696, 697 (9th Cir. 1993).

the special conditions had no reasonable relationship to the goals of rehabilitation and protection. No evidence existed suggesting that the defendant suffered from alcoholism or that the use of alcohol in any way contributed to the offense at issue, and the court never made specific findings of such. Hence, this court held the district court abused its discretion in imposing the condition. In United States v. Bass, 121 F.3d 1218 (8th Cir. 1997), two defendants were found guilty of conspiring to distribute and possess with intent to distribute crack cocaine. One of the defendants challenged the court's special conditions of supervised release barring his possession and use of alcohol and subjecting him to testing and warrantless searches. In justifying the special condition, the lower court reasoned that the defendant might substitute alcohol dependency for his drug dependency. Similar to the situation in Prendergast, however, there was no evidence to suggest that the defendant abused alcohol or that alcohol played a role in the crime at hand. This court rejected the lower court's assumption that the defendant would substitute one controlled substance for another and found that the imposed conditions were not reasonably related to the defendant's rehabilitation and the protection of the public.

The government concedes that the special condition of mental health treatment is unrelated to the nature of Kent's offenses; however, it argues that the condition is consistent with the goals of rehabilitation and protection as found in Prendergast. The government cites Cooper, 171 F.3d 582, as support for the psychiatric counseling condition. In Cooper, the defendant pleaded guilty to unlawfully transporting explosive materials. Among the eight special conditions of his supervised release was a requirement that the defendant undergo mental health counseling. The lower court imposed this condition after hearing testimony that the defendant physically abused his wife and children, as well as a psychiatrist's report that the defendant would probably cease taking his anti-depressants if removed from a controlled environment. This court upheld the special condition, stating that it was justified by Cooper's recent episodes of major depression, refusal to take prescribed anti-depressants, and conduct endangering himself and others. See id. at 587.

We find Kent's case better aligned with Prendergast and Bass than with Cooper. The instances of abuse recounted by Marijo occurred at least thirteen years prior to the hearing, and Marijo admitted that Kent had not physically abused her since then.[4] Thus, the use of the condition as a deterrent makes little sense in light of the fact that the behavior to be deterred had ceased independently. Similarly, the "public protection" justification no longer applies since Kent and Marijo have reconciled.[5] Additionally, the government failed to provide any testimony from a medical expert aimed at addressing Kent's current mental condition. Neither Dawson nor Heeren-Graber are medical professionals, and, at the time of trial, neither had ever met Kent, let alone studied his current mental state. Moreover, neither of the pre-sentence reports for Kent's criminal convictions suggest any past or present mental health problems. There is nothing to suggest the condition will provide "needed" medical attention as required by 18 U.S.C. § 3553(a)(2)(D). Much like the situation in Bass, the district court's imposition of the mental health counseling condition is based on a groundless assumption: that Kent would become abusive towards his wife upon his release from prison, even though he has neither physically abused her nor threatened such abuse in over a decade. The district court had no reason to believe that psychiatric counseling was necessary.

---

[4]While recognizing that most of the physical abuse occurred years ago, the district court stated that it nevertheless found "more recent incidents" of abuse, specifically mentioning instances where Kent dragged Marijo by her hair. (Tr. at 66.) We are confused by this assertion, as nothing in Marijo's testimony suggests that this occurred more recently than the other episodes to which Marijo testified. She specifically admitted there had been no physical abuse since 1986 at the latest; we understand that to mean that the hair-pulling incidences to which the district court alluded occurred prior to that time.

[5]Moreover, now that the couple has seemingly reconciled to the extent that she has voluntarily chosen to have contact with him, the federal court should stay its hand in any domestic relations dispute.

We are not persuaded otherwise by <u>Behler</u>, 187 F.3d 772. In <u>Behler</u>, the defendant, who was convicted of several counts of drug trafficking, challenged the lower court's imposition of special conditions of supervised release. Among other things, the court barred Behler from alcohol and required him to attend and complete any chemical dependency evaluation or program as directed by his probation officer. This court upheld the conditions, even though Behler had discontinued abusing drugs ten years earlier and there was neither an indication that alcohol played any role in the trafficking offense nor evidence to suggest that Behler had a history of abusing alcohol.

This case is factually distinguishable from <u>Behler</u>. Behler's crimes involved the trafficking of methamphetamine while in possession of a firearm, and Behler's former drug problem included methamphetamine abuse. <u>See</u> <u>Behler</u>, 187 F.3d at 779. Thus, as Behler's crimes were drug-related, it was sensible to require him to undergo substance abuse treatment despite the span of years since he had abused drugs. In this case, at least thirteen years have passed since Kent physically abused or threatened Marijo, his offenses are completely unrelated to the imposed condition, and there is no evidence in the record to suggest that mental health counseling will further the goals of deterrence or public protection. Hence, based on the facts in this case, <u>Behler</u> does not require us to uphold the condition.

Moreover, the court must keep in mind that its conditions of supervised release are to infringe the defendant's liberty only to the extent necessary to effectuate the goals of Congress and the Commission. The court expressly admitted that it did not believe Kent presented a threat to anyone except possibly Marijo. As such, the court should only have been concerned with keeping him away from her. The better alternative in this case was to order full compliance with the temporary restraining order. Imposing the additional requirement that Kent potentially submit to psychological counseling, when there is no evidence suggesting the necessity or desirability of the condition and the alleged reason for the condition is based upon

events taking place long before Kent's prison term, was an abuse of discretion and an excessive infringement of Kent's liberty.

## C. Delegation of Authority to the Probation Officer

The duties of probation officers are set out at 18 U.S.C. § 3603. Among other things, a probation officer shall: (1) "instruct a probationer or a person on supervised release, who is under his supervision, as to the conditions specified by the sentencing court"; and (2) "perform any other duty that the court may designate." 18 U.S.C. § 3603(1), 3603(10) (1998). While the latter statement may seem a broad grant of authority at the behest of the district court, it is limited by the probation officer's status as a nonjudicial officer. As the Supreme Court explained in Ex parte United States, 242 U.S. 27, 41-42 (1916):

> Indisputably under our constitutional system the right to try offences against the criminal laws and upon conviction to impose the punishment provided by law is judicial, and it is equally to be conceded that in exerting the powers vested in them on such subject, courts inherently possess ample right to exercise reasonable, that is, judicial, discretion to enable them to wisely exert their authority.

Thus, the imposition of punishment is a judicial function reserved to the courts under Article III of the United States Constitution.

The courts have been faced many times with the question of the proper amount of authority to be delegated a probation officer. One of the more illuminating opinions on the subject is United States v. Johnson, 48 F.3d 806 (4th Cir. 1995). In Johnson, the defendant was sentenced to forty-six months imprisonment and five years supervised release for defrauding financial institutions and individual account holders. Quoting the district court, the appellate court noted the language of the special condition requiring Johnson to pay restitution "in such amounts and at such times as

may be directed by the Bureau of Prisons and/or the Probation Officer." Johnson, 48 F.3d at 807. Furthermore, the district court ordered Johnson to make payments of at least $100.00 per month, and it authorized the probation officer to increase the monthly payment if the officer determined Johnson was capable of paying more. See id. The Fourth Circuit Court of Appeals upheld Johnson's challenge, stating that 18 U.S.C. §§ 3556 and 3663 give the court, not the probation officer, the authority to order restitution and, as such, only the court may resolve disputes over the proper amount of restitution. The court explained: "the imposition of a sentence, including any terms for probation or supervised release, is a core judicial function." Id. at 808.

Regarding the seemingly broad language of 18 U.S.C. § 3603(10), the Johnson court stated:

> While the statute does authorize the district court to order the probation officer to perform such duties as the court directs, the type of duty that the court may so delegate is limited by Art. III. Cases or controversies committed to Art. III courts cannot be delegated to nonjudicial officers for resolution. That general principle does not, however, prohibit courts from using nonjudicial officers to support judicial functions, as long as a judicial officer retains and exercises ultimate responsibility. . . . [I]n every delegation, the court must retain the right to review findings and to exercise ultimate authority for resolving the case or controversy.

Id. at 808-09 (emphasis added).

In this case, the court explicitly stated it hoped it would not be "riding herd" in the probation officer's decision to require Kent to undergo psychiatric treatment. Thus, it is entirely possible that Kent's probation officer, as opposed to the court, would retain and exercise ultimate responsibility over the situation. This is inconsistent with Article III, as well as U.S.S.G. § 5D1.3(b), which specifically provides that the court may impose special conditions of supervised release. Hence, we find that the lower court improperly delegated a judicial function to Kent's probation officer when it

allowed the officer to determine whether Kent would undergo counseling. We limit our holding only to the facts of this case, however, as we realize that the federal district courts cannot be expected to police every defendant to the extent that a probation officer is capable of doing.

## III. CONCLUSION

For these reasons, we REVERSE and VACATE the district court's imposition of the second special condition.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.