# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2324

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Thomas Mickelson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 15, 2005
Filed: January 6, 2006

_____

Before MURPHY, McMILLIAN, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Thomas Mickelson pled guilty to receiving child pornography in violation of 18 U.S.C. § 2252(a)(2)(A). The district court[1] sentenced him to 51 months imprisonment and three years of supervised release with a number of special conditions. Mickelson appeals, challenging the reasonableness of his sentence and the validity of several terms of his supervised release. We affirm.

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

Mickelson was charged on December 16, 2003 with one count of receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2)(A) (count 1), and one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (count 2). He pled guilty to count 1 on December 10, 2004 pursuant to a plea agreement. At the sentencing hearing he stipulated to a total offense level under the advisory guidelines of 22, a criminal history category of I, and a guideline range of 41 to 51 months. Mickelson's counsel suggested that a sentence at the bottom end would be more appropriate but asked the court to sentence him "somewhere within that range."

The district court chose to sentence Mickelson at the top of the guideline range. The court considered the factors in 18 U.S.C. § 3553(a) before choosing a sentence of 51 months, based on the seriousness of Mickelson's offense, his admission that he had sent images to other persons, his use of a computer in receiving images, and the fact that some of the images depicted children under the age of 12 and sadistic or masochistic violence. Although the district court also recognized potentially mitigating circumstances, including Mickelson's history of serious mental health issues, his alcoholism, and his physical disability, it declined to reduce his sentence, at least in part because the court found no evidence of a causal relationship between these factors and his offense.

The district court also sentenced Mickelson to three years of supervised release with a number of special conditions to which his counsel objected. Special Conditions 3 and 4 required Mickelson to participate in the Remote Alcohol Testing Program or Video Information Capture and to be placed on the Global Positioning Satellite (GPS) system for tracking at the discretion of the probation office. Special Condition 6 required Mickelson to receive mental health counseling if his probation officer deemed it appropriate. Special Condition 12 required Mickelson to have no contact with children under the age of 18 without the prior written consent of the probation office.

On appeal, Mickelson contends that his 51 month sentence was unreasonable, that Special Conditions 3, 4, and 6 constituted an improper delegation of the court's authority to the probation office, and that Special Condition 12 was "unnecessary and unreasonable" and therefore an abuse of discretion.

Mickelson first challenges his sentence as unreasonable. He argues that he was a "fringe offender" in the world of child pornography and the district court therefore made a "clear error in judgment" by sentencing him at the top of the advisory guideline range. He also contends that the court abused its discretion by focusing on whether his mitigating circumstances were causally related to his instant offense.

The government's initial argument is that this court lacks jurisdiction to review Mickelson's sentence because it was within the guideline range and a sentence within the guideline range is not listed as one of the bases for appellate review in 18 U.S.C. § 3742(a). Its second argument is that Mickelson waived his right to challenge his sentence because it was within the guideline range to which he had agreed. Finally, the government contends that Mickelson's sentence was presumptively reasonable because it was within the guideline range, the district court did not err in calculating the guidelines, and it considered all of the relevant factors under 18 U.S.C. § 3553(a).

I.

We have already rejected the government's jurisdictional argument in United States v. Frokjer, 415 F.3d 865, 875 n.3 (8th Cir. 2005), and United States v. McCully, 407 F.3d 931, 933 n.2 (8th Cir. 2005). In those cases we held that an unreasonable sentence would be "in violation of law" and subject to review under 18 U.S.C. § 3742(a)(1) regardless of whether it was within the guideline range. In many other cases subsequent to United States v. Booker, 125 S.Ct. 738 (2005), we have conducted a reasonableness review of sentences within the guideline range. See, e.g., United States v. Marcussen, 403 F.3d 982, 985 (8th Cir. 2005); United States v. Ameri, 412

F.3d 893, 901 (8th Cir. 2005); United States v. Marshall, 411 F.3d 891, 897 (8th Cir. 2005). The government cites no post Booker case law in support of its jurisdictional argument.

Although we are bound by our precedents in Frokjer and McCully and only the court en banc could overturn them, see Biello v. Kum & Go, LLC., 374 F.3d 656, 661 n.4 (8th Cir. 2004), we remain free to analyze the argument which the government continues to raise. Since its argument is based on statutory wording, we start by examining the language of the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq. See Musick, Peeler & Garrett v. Employers Ins. of Wausau, 508 U.S. 286, 302 (1993) ("The starting point in every case involving construction of a statute is the language itself.") (internal quotations omitted); United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000) ("(O)ur starting point in interpreting a statute is always the language of the statute itself. If the plain language of the statute is unambiguous, that language is conclusive...If, on the other hand, the language of the statute is ambiguous, we should consider the purpose, the subject matter, and the condition of affairs which led to its enactment.") (internal quotations omitted).

Under 18 U.S.C. § 3742(a) of the Sentencing Reform Act (the Act), appellate review was authorized for challenges by defendants if the sentence 1) was imposed in violation of law; 2) resulted from incorrect application of the guidelines; 3) was greater than the sentence specified under the applicable guideline range; or 4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable. The parties in this case agree that the district court did not err in applying the guidelines and that Mickelson's sentence was not above the guideline range; his sentencing appeal thus does not fit within the second or third provisions. A sentence within the guideline range is not explicitly mentioned in § 3742(a), and the government suggests that the plain language of the statute does therefore not provide for appellate review over such a sentence.

Section 3742(a)(1) does not define what is meant by a sentence "imposed in violation of law," and the language itself can be read to cover Mickelson's sentencing appeal although it does not do so explicitly. In this respect the statutory language is ambiguous. Our rule prior to Booker was that courts lacked jurisdiction to review a sentence "within a properly determined guideline range" unless there was some constitutional problem, United States v. Smotherman, 326 F.3d 988, 989 (8th Cir. 2003), and other circuits interpreted the statute similarly. See, e.g., United States v. Tucker, 892 F.2d 8, 11 (1st Cir. 1989); United States v. Colon, 884 F.2d 1550, 1553 (2d Cir. 1989). The present ambiguity in the phrase "in violation of law" results from Booker's holding that the guidelines are no longer mandatory. See 125 S.Ct. at 764. This holding transformed the federal guideline system from a mandatory regime to a system of advisory guidelines, implicitly requiring renewed consideration of which sentences are "imposed in violation of law."

We accordingly turn to an examination of the purpose of the Act and its legislative history. Under the Act as originally written and prior to Booker, the federal sentencing guidelines were mandatory and a sentence within the guideline range was required unless there was a valid basis for departure. See, e.g., United States v. Mora-Higuera, 269 F.3d 905, 913 (8th Cir. 2001). In order to overcome the sixth amendment infirmities identified in Justice Stevens' majority opinion in Booker, 125 S.Ct. at 749-50, Justice Breyer's remedial opinion looked to the structure and purpose of the Act to determine what Congress would have intended as a remedy. Id. at 761-62. The Court then excised two provisions of the Act, eliminating the mandatory nature of the guidelines and changing the de novo standard of appellate review to review for reasonableness. Id. at 764-65. We likewise look to the legislative history to inform our understanding of § 3742(a) and to determine whether a sentence within the applicable guideline range "was imposed in violation of law" if it was unreasonable. 18 U.S.C. § 3742(a)(1).

-5-

By passage of the Act Congress greatly expanded appellate review of sentencing decisions by federal district courts. See S. Rep. No. 98-225, at 150 (1983). To overturn a sentence prior to the Act defendants had to show that it was so disproportionate to the offense as to violate the Eighth Amendment, Rummel v. Estelle, 445 U.S. 263, 271 (1980), or that there was some other procedural infirmity. See, e.g., North Carolina v. Pearce, 395 U.S. 711, 725-26 (due process violated by vindictive imposition of more severe sentence following successful appeal); see also Gore v. United States, 357 U.S. 386, 393 (1958) ("Whatever views may be entertained regarding severity of punishment ...these are peculiarly questions of legislative policy."). With the Act Congress provided for sentencing appeals by defendants under § 3742(a), as well as by the government under § 3742(b).

To the authors of the Act the chief flaws of the old system were the "almost absolute (judicial) discretion to impose any sentence legally available," S. Rep. No. 98-225, at 150 (1983), and the resulting lack of consistency in sentences imposed by different federal district courts for similar offenses. Id. at 41-46. The Act's provisions for appellate review of federal sentencing decisions were intended to reduce disparity in sentencing while also serving as a means to identify potential problems with the guidelines that could be remedied by the United States Sentencing Commission. Id. at 151. Appellate review would "focus attention on those sentences whose review is crucial to the functioning of the sentencing guidelines system, while also providing adequate means for correction of erroneous and clearly unreasonable sentences." Id. at 155. The Act would also require the sentencing judge to give "reasons for the sentence imposed" to assist review of the "reasonableness of a sentence outside the (mandatory) guidelines." Id. at 60. And case law could be developed on "the appropriate reasons for sentencing outside the guidelines." Id. at 151.

The remedial opinion in Booker examined the Act to determine which of its provisions are "the most compatible with the legislature's intent as embodied in the 1984 Sentencing Act." 125 S.Ct. at 757. The Court recognized the central legislative

intent to diminish disparity in sentencing, id. at 761, and to refine the guidelines system through the process of appellate review. Id. at 767. The Court thought it important to invalidate no more of the Act than was necessary while retaining the provisions which could function independently of the constitutional infirmities. Id. at 764. Consequently, the sentencing judge in the advisory guideline system is to consider the guideline range, any "pertinent Sentencing Commission policy statement," and the factors in § 3553(a) of the Act which remain valid. Id. at 764-65. The appropriate standard of review for advisory guideline sentencing was inferred from the text and structure of the Act. Sentences are to be reviewed for unreasonableness, a standard Justice Breyer found compatible with the structure of the Act, and one contained in its original provisions for review of departures and sentences outside the guideline range, thus "already familiar to appellate courts." Id. at 765. The Court concluded that review of all sentences for unreasonableness would be compatible with the central goals of the Act. Id. at 767-68.

In this section of the remedial opinion Justice Breyer specifically stated that § 3742(a) "*continues to provide for appeals from sentencing decisions (irrespective of whether the trial judge sentences within or outside the Guidelines range in the exercise of his discretionary power under § 3553(a)).*" Id. at 765 (emphasis added). The majority's decision that appellate courts are to review sentencing decisions within the guideline range for reasonableness was attacked by Justice Scalia who recognized that the Court was imposing reasonableness review "across the board to all sentencing appeals, even to sentences within 'the applicable guideline range,' where there is no legal error or misapplication of the Guidelines." Id. at 794 (Scalia, J., dissenting). Justice Breyer responded to this portion of Justice Scalia's dissent by affirming that it correctly characterized the reach of the majority's remedial opinion for "we believe that appellate judges will prove capable of facing with greater equanimity than would Justice Scalia what he calls the 'daunting prospect' of applying such a standard *across the board*." Id. at 766 (internal citation omitted) (emphasis added).

By selecting a reasonableness standard of review as most compatible with the Act and applicable to sentences either "within or outside" the range of the now advisory guidelines, Booker, 125 S.Ct. at 765, the Court conformed the Act to its sixth amendment remedy and provided for appellate review over all discretionary sentencing decisions for unreasonableness. As we recognized in United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir. 2005), calculation of the appropriate guideline sentence is only the first step in sentencing decisions under Booker, for the court must also consider the § 3553(a) factors before making its ultimate decision. Under this regime a guideline sentence, although presumptively reasonable, United States v. Lincoln, 413 F.3d 716, 717-18 (8th Cir. 2005), can still be unreasonable when all the § 3553(a) factors are taken into consideration. The extent of a departure was always reviewed under the Act for reasonableness using the § 3553(a) factors, 18 U.S.C. § 3742(e)(3), and consideration of these factors under the discretionary guideline system is similarly subject to review for reasonableness.

Adoption of the rule urged by the government, that a sentence within the guideline range is not subject to reasonableness review, would have the effect of returning federal sentencing to something like the mandatory guideline system found unconstitutional in Booker. See 125 S.Ct. at 746. Under such a rule trial courts would be encouraged to sentence only within the guideline range to avoid having sentences overturned on appeal. This would effectively restore the rigidity in sentencing which the Booker majority held to violate the sixth amendment rights of defendants. See id. at 750-51. It is unlikely that Congress would have intended the appellate review it created in § 3742(a) to be construed so restrictively since the legislative history shows its purpose in enlarging such review was to reduce disparity and to identify potential sentencing problems. See S. Rep. No. 98-225, at 49, 151 (1983).

In contrast to the sentencing scheme before Booker when a sentence outside the mandatory guideline range was permitted only on very limited grounds, there are now more sentencing variables. Both the grounds to support a sentence outside the range

and the sentencing judge's discretion in weighing those grounds have increased significantly. While appellate review of sentences within the guideline range was not seen as essential to the functioning of the original mandatory system, with advisory guidelines appellate review of sentences both within and without the guideline range is critically important to meet the congressional goals of eliminating sentencing disparities and refining the guideline system. See S. Rep. No. 98-225, at 151 (1983).

We conclude that appellate review for sentences both within or outside the guideline range fits within "what Congress would have intended in light of the Court's constitutional holding." Id. at 757 (internal quotations omitted). Our holdings in Frokjer, 415 F.3d at 875 n.3, and McCully, 407 F.3d at 933 n.2, are supported by the language and structure of the Act, its legislative history, and Booker, and we thus reject the government's argument that we do not have jurisdiction to review Mickelson's sentence for reasonableness under § 3742(a)(1).[2]

## II.

The government next argues that Mickelson waived his right to challenge his 51 month sentence. A defendant who explicitly and voluntarily exposes himself to a specific sentence may not challenge that punishment on appeal. United States v. Nguyen, 46 F.3d 781, 783 (8th Cir. 1995). Mickelson stipulated to the total offense level on which the district court based its guideline determination and to a guideline range of 41-51 months. Moreover, at sentencing his counsel asked for a sentence within that range but stated a preference for a sentence at the bottom. Mickelson did not waive his right to appeal his sentence in his plea agreement, but his stipulation and

---

[2]Because of this conclusion, we need not address whether § 3742(a)(4) would also support reasonableness review over a sentence within the guideline range as some suggest. (Section 3742(a)(4) provides for appeal of sentences "imposed for an offense for which there is no sentencing guideline and is plainly unreasonable," and after Booker there is no longer a binding sentencing guideline for any offense.)

his counsel's request for a sentence within the guideline range may be interpreted as an acknowledgment that any sentence within the range would have been reasonable.

Even without such an acknowledgment, sentences within the applicable guideline range are presumptively reasonable. Lincoln, 413 F.3d at 717-18. The district court chose a sentence at the top of the range stipulated to by the parties only after considering all of the § 3553(a) factors individually. The factors that appear to have been most determinative for the court were the "nature and circumstances" of Mickelson's offense, which the district court considered to be "very serious." It also discounted the importance of his mitigating factors because it concluded that they had had no causal relationship to his offense. The court did not imply that a cause and effect relationship was necessary in order to take account of mitigating factors, only that it found the absence of such a relationship significant in this case. Mickelson has not shown that the district court considered any impermissible factor or gave undue weight to a pertinent factor in arriving at his sentence. See Haack, 403 F.3d at 1004. We conclude from our review of the record that Mickelson's sentence was not unreasonable.

III.

Mickelson also challenges several of the conditions imposed as part of his supervised release. He contends that Special Conditions 3, 4, and 6 are improper delegations of authority by the district court because of the discretion given to the probation office in overseeing them. These conditions require him to participate in the Remote Alcohol Testing Program or Video Information Capture and to be placed on the GPS system for tracking at the discretion of the probation office, and to receive mental health counseling if deemed appropriate by his probation officer. He also argues that Special Condition 12, requiring him to have no contact with anyone under the age of 18 without the express written permission of the probation office, is unnecessary and unreasonable given the circumstances of his case, including his close

relationship with his grandchildren. The government responds that the district court did not abuse its discretion with respect to any of the challenged conditions. We review terms and conditions of supervised release for abuse of discretion. United States v. Ristine, 335 F.3d 692, 694 (8th Cir. 2003).

A sentencing judge may impose special conditions of supervised release if the conditions are reasonably related to the § 3553(a) factors, involve no greater deprivation of liberty than is reasonably necessary, and are consistent with any pertinent policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3583(d). The judge may also modify a condition at any time prior to the end of the term of supervised release. 18 U.S.C. § 3583(e). Conditions delegating limited authority to non judicial officials such as probation officers are permissible so long as the delegating judicial officer retains and exercises ultimate responsibility. See United States v. Kent, 209 F.3d 1073, 1078-79 (8th Cir. 2000).

In Kent we recognized that a trial court "cannot be expected to police every defendant to the extent that a probation officer is capable of doing." Id. at 1079. Moreover, flexible conditions can serve a defendant's interests since they can be tailored to meet his specific correctional needs. See United States v. Cooper, 171 F.3d 582, 587 (8th Cir. 1998). Although we reversed a special condition in Kent requiring the defendant to undergo psychiatric treatment upon release, that was because statements by the district court there could have been interpreted to vest final authority in the probation office. 209 F.3d at 1079. In contrast, the district court here gave no indication that it would not retain ultimate authority over all of the conditions of Mickelson's supervised release, and it specifically stated that it intended to limit conditions to those actually needed. We conclude there was no abuse of discretion in respect to Special Conditions 3, 4, and 6.

As for Special Condition 12, Mickelson cites no case law in support of his contention that it was unnecessary or unreasonable. We have in fact recently

approved virtually identical supervised release conditions following guilty pleas on similar charges, albeit in cases involving defendants with more serious records than that of Mickelson. See United States v. Mark, 425 F.3d 505, 507-08 (8th Cir. 2005); United States v. Crume, 422 F.3d 728, 733-34 (8th Cir. 2005); United States v. Heidebur, 417 F.3d 1002, 1005 (8th Cir. 2005). We do not find the differences between their records determinative, for requiring prior approval before a convicted sex offender has contact with minors is a reasonable means of ensuring that such contact remains appropriate. See Mark, 425 F.3d at 508. The district court's refusal to incorporate a blanket exception for Mickelson's grandchildren or other family members was not unreasonable given the fact that most sexual abuse of children takes place at the hands of family members or friends. See, e.g., Michele L. Earl-Hubbard, The Child Sex Offender Registration Laws, 90 Nw. U. L. Rev. 788, 851-52 (1996)(noting that as many as 92% of reported incidents of child molestation are committed by family members or friends of the victim). Moreover, Mickelson has not been forbidden from seeing his grandchildren or any other family member; he is merely required to seek prior permission. If such permission is arbitrarily or unfairly denied, he is free to seek relief from the district court under § 3583(e). This arrangement does not constitute an abuse of discretion.

## IV.

Accordingly, the judgment of the district court is affirmed.

_____