# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-3001/08-1023

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Carl Dean Wynn, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 10, 2008
Filed:February 2, 2009

_____

Before LOKEN, Chief Judge, EBEL,[1] and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Carl Dean Wynn, Jr., pled guilty to impersonating a federal officer, in violation of 18 U.S.C. § 912.  The district court[2] sentenced him to a term of twelve months' probation.  The court later revoked Wynn's term of probation for violating the conditions of the sentence and sentenced him to 12 months' imprisonment and an

_____

[1]The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

[2]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

additional 12 months of supervised release. Wynn noticed an appeal from both the original sentence and the sentence resulting from the revocation of probation. We affirm.

I.

In April 2007, Wynn pled guilty to impersonating a federal officer. The indictment alleged that Wynn "pretended to be an Agent with the United States Border Patrol, and while so pretending, acted with the intent to cause a person to follow some course of action by falsely appearing to be conducting a criminal immigration investigation of a business in order to cause the business to follow employment practices desired by the Defendant."

This prosecution arose from complaints to law enforcement by the owner of a construction company in Little Rock, Arkansas. The owner reported that an unknown person had placed spikes in the driveway of his business, causing damage to the tires on company vehicles, and that the business had received letters threatening legal action or citizen's arrests in response to the company's alleged hiring of illegal aliens. He furnished a surveillance video that showed an unidentified person throwing spikes from a dark automobile onto the driveway of the business. The owner also reported seeing a green Jeep, bearing an emblem similar to that of the United States Border Patrol, parked at a nearby residence along with a black automobile that resembled the vehicle in the surveillance video. The emblem on the Jeep included a portion of the great seal of the United States and the words "United States of America Citizens Task Force." A similar emblem also appeared on the correspondence received by the construction company. Officers determined that Wynn resided at the residence, and surveillance video from later dates showed a person matching Wynn's description at the location of the business when additional spikes were placed in the driveway.

Agents arrested Wynn and discovered in Wynn's vehicle spike sticks like those that damages tires at the construction company. In a search of Wynn's residence, agents found two U.S. Border Patrol badges, two U.S. Border Patrol t-shirts with "Volunteer" printed on the back, two U.S. Border Patrol caps, a bullet-proof vest, and literature matching that mailed to the construction company. Wynn later admitted possessing items "very similar" to those of the United States Border Patrol, and sending mail to the construction company, all for the purpose of deterring the company from hiring illegal aliens.

The district court placed Wynn, who had served four months in pre-trial detention, on probation for one year. As a special condition, the court ordered that Wynn was "precluded from displaying or causing to be displayed the seal of the United States, or any likeness thereof, capable of conveying the false impression that such seal represents an official department, agency, bureau, or instrumentality of the United States or is sponsored by the United States in any way." The court explained that this restriction on use of emblems was appropriate to ensure that Wynn did not "intimidate or cause people to change their actions and response thereto on the theory that it was an official act of the federal government." (S. Tr. 10). The judgment dated August 23, 2007, required that Wynn remove the decals on his vehicle "immediately, and in any event not later than September 7, 2007." The court also directed that Wynn must "participate in mental health counseling under the supervision of the U.S. Probation Office," and "cooperate in the collection of DNA as directed by the probation officer."

Not long after Wynn's term of probation commenced, the government petitioned the district court to consider violations of the conditions of Wynn's probation. In the October 4, 2007 petition, the probation office reported that Wynn had not removed the decals from his vehicle. Instead, he had merely covered them with black plastic and asserted that he was not required to remove the decals because the vehicle belonged to his girlfriend. Wynn also refused to permit the probation

office to collect his DNA, asserting that only medical personnel could collect DNA, and that he would sue the Department of Justice if the probation office proceeded with collection. The district court scheduled a revocation hearing for October 5 and issued a warrant for Wynn's arrest. The United States Marshall was unable to locate Wynn, and Wynn did not appear for the hearing.

According to the affidavit of a probation officer, Wynn called the probation office from Springdale, Arkansas, on October 23, advised that he knew there was a warrant for his arrest, explained that he was "doing something," and said that he would report in three or four days. Wynn did not report in October, but called again on November 27, and said that he would report on December 5. On December 3, however, Wynn was arrested in Alexander, Arkansas, after a routine traffic stop led to execution of the outstanding warrant.

At a revocation hearing in December, the district court found that Wynn had violated the condition of probation that he remove the decals on his vehicle, saying that "substituting your own idea that covering it up would be adequate is not an adequate answer." (R. Tr. 56). The court also determined that Wynn violated a standard condition that he "shall not leave the judicial district without the permission of the court or probation officer." Wynn admitted that he had departed the district without permission, but claimed that he thought the restriction required only that he remain in the State. The court rejected this explanation and also noted that Wynn had refused to report for sixty days after he learned that there was a warrant for his arrest.

In considering the appropriate sanction, the district court reviewed Wynn's criminal history. This history included three convictions for terroristic threats, which were based on (1) an incident in which mailed portions of a bomb and a sketch of the bomb to an Arkansas man with a note that said, "I will spare no expense to get you dead bastard;" (2) a telephone call in which Wynn threatened a woman by saying that he was going to shoot her and hide her body; and (3) an assault against several

detention officers with a phone handset and a wall phone cord. Wynn's record also included a conviction for possession with intent to distribute marijuana, which resulted from a search at Wynn's residence that discovered marijuana, scales, three handguns, three assault rifles, two .22 caliber rifles, two shotguns, brass knuckles, a bulletproof vest, a scanner, walkie-talkies, night vision goggles, and $7500 in currency. The court remarked that "[d]espite all of that," it had granted Wynn a sentence of probation for impersonating a federal officer, on the hope that "everything would work out fine." (R. Tr. 58). After finding the violations of probation, the court sentenced Wynn to one year in prison, followed by twelve months of supervised release, saying that "[i]t's probably what I should have done in the first instance." (*Id.*).

## II.

## A.

Wynn argues that the district court abused its discretion by revoking his probation. Wynn claims that the evidence does not support a finding that he intentionally absconded from the judicial district, because he mistakenly believed that he could travel anywhere within the State. Wynn also argues that he complied with the district court's condition that he remove the decals on his vehicle by covering them with black plastic.

A district court may revoke a term of probation if there is "enough evidence, within a sound judicial discretion, to satisfy the district judge that the conduct of the probationer has not met the conditions of probation." *United States v. Meyer*, 483 F.3d 865, 868 (8th Cir. 2007) (internal quotation omitted). We review the district court's decision to revoke for abuse of discretion, *id.*, and we find none here. Wynn was required by the conditions of probation to remove the decal, not merely to cover it up. He failed to comply with this condition, and the district court was not required

to accept Wynn's proposed modification. Perhaps more significantly, Wynn knew that there was a warrant out for his arrest, but refused for sixty days to report to the probation office, despite a standard condition that he follow the instructions of the probation officer. Wynn also left the judicial district, in contravention of the first standard condition that he not do so without permission. The court considered Wynn's claim that he thought he was required only to stay within the State, but credited the testimony of Wynn's probation officer, who explained that she told Wynn that he must stay within the judicial district. This evidence adequately supports a finding that Wynn violated the conditions of his probation, and the district court did not abuse its discretion by revoking Wynn's probation.

B.

Wynn next argues that the sentence imposed after revocation of probation is excessive. Wynn asserts no procedural error in the sentencing, and we review the substantive reasonableness of the sentence under a "deferential abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 591 (2007); *see also United States v. Tyson*, 413 F.3d 824, 825-26 (8th Cir. 2005) (per curiam). The advisory guideline range for Wynn's revocation of probation was a term of 5 to 11 months' imprisonment, based on a Grade C violation of probation and a criminal history category III. USSG § 7B1.4(a); PSR ¶ 29. Where, as here, the sentence varies from the advisory range, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range," while giving "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 128 S. Ct. at 595, 597.

We conclude that the district court's sentence of 12 months' imprisonment was substantively reasonable. The sentence deviated by only one month from the range recommended by the Sentencing Commission. Wynn's serious criminal history, his violation of multiple conditions of probation, and his refusal to report in the face of

clear notice that a warrant was issued for his arrest amply justified the district court's exercise of discretion.

## C.

Wynn also challenges several conditions of his supervision by the probation office.  Although Wynn frames the argument as a challenge to the original sentence of probation, he observes that similar or identical conditions were included as part of court's order that he serve a term of supervised release after release from incarceration.  Because Wynn's term of probation was revoked, his appeal of the conditions of probation is moot, *see United States v. Cooper*, 171 F.3d 582, 584 (8th Cir. 1999), except to the extent that he alleges the revocation was based on a purported violation of an invalid condition.  Nonetheless, we construe Wynn's appeal also to challenge the district court's imposition of special conditions of supervised release that parallel the original conditions of probation.  We review the imposition of the disputed conditions for abuse of discretion.  *Id.* at 585.

Wynn objects to a condition that he "shall cooperate in the collection of DNA," arguing that the collection must be conducted by qualified medical personnel rather than a probation officer.  Wynn's challenge arises from his experience on probation, when a probation officer in Arkansas sought to collect DNA by pricking Wynn's finger to draw six drops of blood.  Whatever the merits of that procedure, on which we express no view, the district court's order revoking probation did not make cooperation with the collection of DNA a condition of supervised release under the direction of the probation office.  Rather, the court included the requirement in its discussion of Wynn's incarceration.  Federal law requires the Bureau of Prisons to collect a DNA sample from each individual in custody who has been convicted of a felony, 42 U.S.C. § 14135a(a)(1)(B); 28 C.F.R. § 28.12(a), and Wynn made no showing about the procedures used by the BOP to collect DNA or the qualifications of personnel who do so.  The district court's order that Wynn "cooperate in the

collection of DNA" mirrors the relevant federal regulation, 28 C.F.R. § 28.12(d), and we see no basis to question its inclusion in the sentencing order.

Wynn also argues that the district court abused its discretion by ordering Wynn to participate in mental health counseling. The court's order provided that "[d]uring Supervised Release, the Defendant shall participate in mental health counseling (if so directed) under the supervision of the U.S. Probation Office." (The original order of probation required that Wynn "shall participate in mental health counseling under the supervision of the U.S. Probation Office.")

Wynn contends that there is no nexus between his offense and any mental condition, and that the mental health counseling ordered by the district court is not reasonably related to the nature and circumstances of his offense, or the history and characteristics of the defendant. "[T]o impose the special condition of participation in a mental health program, the court must have reason to believe the party is in need of such treatment." *United States v. Kent*, 209 F.3d 1073, 1076 (8th Cir. 2000). We believe the district court had such reason here. Wynn has a history of violent and threatening conduct. (PSR ¶ 23-26). He was referred for mental health treatment as part of supervised release in 1998 and 1999 and was prescribed medications. (PSR ¶ 38). While on probation for the instant offense, Wynn participated in a counseling session during which he told a counselor that he entertained homicidal and suicidal thoughts. (R. Tr. 39). Although Wynn testified that he was just "mess[ing] with [the counselor's] head" and "mak[ing] up stuff to say," the counselor's report provided a legitimate basis for the district court to impose the condition.

Wynn also asserts that delegating to the probation office authority to decide whether to order mental health counseling is an impermissible delegation of the judicial function. In *Kent*, this court held that a district court impermissibly delegated authority to a probation officer to order psychological counseling. 209 F.3d at 1079. In that case, when asked whether the defendant could move the court for

reconsideration if the probation officer ordered counseling, the district court responded: "I don't hope to be riding herd on such questions, but if necessary, I will. But remember, the probation officer is my personal staff and I have confidence in them." *Id*. at 1075. Relying on the district court's statement that it hoped not to be "riding herd" on the probation officer's decision, we concluded that "it is entirely possible that Kent's probation officer, as opposed to the court, would retain and exercise ultimate responsibility over the situation." *Id*. at 1079. Thus, under the facts of that case, this court held that the district court improperly delegated a judicial function to the probation officer.

Since then, however, we have upheld a district court's limited delegation of authority to a probation officer where the court gives no affirmative indication that it would not retain ultimate authority over all of the conditions of supervised release. *United States v. Smart*, 472 F.3d 556, 560 (8th Cir. 2006); *United States v. Kerr*, 472 F.3d 517, 524 (8th Cir. 2006); *United States v. Mickelson*, 433 F.3d 1050, 1057 (8th Cir. 2006). Implicit in these decisions is an assumption that where the district court does not disclaim ultimate responsibility for deciding the appropriateness of mental health counseling, it is likely that the probation officer will consult with the court about the matter or, at a minimum, the court will entertain a motion from the defendant for reconsideration of the probation officer's initial decision. The district court's order in this case fits comfortably within the leeway allowed by *Smart*, *Kerr*, and *Mickelson*, and the record contains no affirmative indication of impermissible delegation that led to the holding in *Kent*.

Finally, Wynn claims that the district court abused its discretion in ordering him to remove the decals from his vehicle. Wynn argues that he merely wishes to display "common emblems," *i.e.*, "the eagle and the geographic outline of the United States," an act that he says would be akin to a citizen's display of the American flag. Because the insignia is not inherently misleading when standing alone, he contends, the court's prohibition on his display of this image impermissibly infringes on his constitutional

right to freedom of speech. In fashioning conditions of supervised release, a district court may impose restrictions on the exercise of fundamental rights, as long as they (1) are reasonably related to the factors set forth in 18 U.S.C. § 3583(d)(1); (2) "involve no greater deprivation of liberty than is reasonably necessary to advance deterrence, the protection of the public from future crimes of the defendant, and the defendant's correctional needs;" and (3) are consistent with any pertinent policy statements issued by the Sentencing Commission. *United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005) (internal quotation omitted); *see also* 18 U.S.C. § 3583(d).

The decals that the district court ordered Wynn to remove from his vehicle were instrumentalities of his offense of conviction. He used them to impersonate a federal officer. The condition that Wynn remove the decals is thus reasonably related to the nature and circumstances of the offense, and it is reasonably necessary to deter criminal conduct, and to protect the public from further crimes of the defendant. The restriction imposed by the district court was tailored to prevent Wynn from displaying only those decals used in the commission of his offense. It did not extend to other objects or images that Wynn could use to communicate patriotic ideas in a lawful manner. We therefore conclude that the special condition was within the district court's discretion to impose.

\* \* \*

For these reasons, the judgment and order of the district court are affirmed.

_____