United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-2325

_____

United States of America,                    *
                                             *
            Plaintiff - Appellee,            *
                                             * Appeal from the United States
      v.                                     * District Court for the District
                                             * of Nebraska.
Herbert Lee Bass, Jr.,                       *
                                             *
            Defendant - Appellant.           *

_____

No. 96-2879

_____

United States of America,                    *
                                             *
            Plaintiff - Appellee,            *
                                             * Appeal from the United States
      v.                                     * District Court for the District
                                             * of Nebraska.
Todd Wakefield, also known as                *
T-Dub,                                       *
                                             *
            Defendant - Appellant.           *

_____

Submitted:  March 12, 1997
      Filed:  August 11, 1997

_____

Before McMILLIAN, FLOYD R. GIBSON, and JOHN R. GIBSON, Circuit Judges.
_____

FLOYD R. GIBSON, Circuit Judge.

Herbert Lee Bass and Todd Wakefield were adjudicated guilty of violating 21 U.S.C. §§ 841(a)(1), 846 (1994), by conspiring to distribute and possess with intent to distribute at least fifty grams of crack cocaine. In these appeals, Bass challenges numerous aspects of his conviction and sentence. Wakefield, on the other hand, raises a single argument that the district court abused its discretion by imposing special conditions of supervised release which absolutely prohibit him from obtaining or consuming alcohol, subject him to testing to detect the presence of alcohol in his body, and require him to submit to warrantless searches for alcohol. We affirm Bass's conviction and sentence in all respects, but we vacate portions of Wakefield's sentence and remand for proceedings consistent with this opinion.

## I. BACKGROUND

On June 14, 1995, a federal grand jury returned a one count indictment charging Bass and Wakefield with conspiring to distribute and possess with intent to distribute crack cocaine, a violation of 21 U.S.C. §§ 841(a)(1), 846. Both men initially entered pleas of not guilty, but Wakefield subsequently changed his plea to guilty pursuant to an agreement he reached with the Government. Bass proceeded to trial, and after four days of testimony a jury convicted him of the drug distribution crime. The district court sentenced Bass to 188 months (fifteen years, eight months) imprisonment, while Wakefield received a period of confinement to span 135 months (eleven years, three months). Upon release from prison, each will serve an additional five years on supervised release.

At the present time, Bass contends that the Government did not introduce sufficient evidence to sustain his conviction. He also complains about certain

evidentiary rulings, claiming that the district court abused its discretion when it (1) permitted the Government to implicate Bass in what he contends were other criminal schemes, and (2) exposed the jury to inadmissible hearsay by allowing a prosecution witness to testify about out of court statements made by one of Bass's alleged coconspirators. In challenging his sentence, Bass asserts that the district court committed error when it refused his request for a downward departure to help ameliorate the 100-to-1 ratio between penalties for crack and powder cocaine. Finally, Wakefield maintains that the district court wrongfully levied special conditions of supervised release which are crafted to ensure that he totally abstains from alcohol usage. We address these allegations seriatim.

## II. DISCUSSION

### A. Bass

Bass assails his conviction and sentence on a number of grounds, but we need not tarry long on any of his contentions. For none of Bass's arguments has more than a mere modicum of merit.

#### 1. Sufficiency of the evidence

Bass propounds that the Government did not present sufficient evidence to support his conviction. "In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." United States v. Black Cloud, 101 F.3d 1258, 1263 (8th Cir. 1996). From this perspective, we must consider whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). An affirmative answer to this inquiry precludes reversal of the conviction.

To prevail in a conspiracy trial, the Government must prove "that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy." United States v. Ivey, 915 F.2d 380, 384 (8th Cir. 1990)(citation omitted). The agreement which lies at the heart of any conspiracy case need not, of course, be expressly stated. Instead, the Government must "only establish a tacit understanding between the parties, and this may be shown wholly through the circumstantial evidence of [the defendant's] actions." United States v. Fregoso, 60 F.3d 1314, 1325 (8th Cir. 1995). "Once a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement." Ivey, 915 F.2d at 384.

Having reviewed the record and read the entire trial transcript, we conclude that the Government introduced ample, if not abundant, evidence of Bass's guilt. Five of Bass's coconspirators testified against him. Two of these individuals, Santanus Chambers and Terry Glen Ford, confirmed that they sold to Bass large quantities of cocaine over an extended period of time. Two street level dealers,[1] Antonio Nelson and Dale Giles, verified that they regularly purchased from Bass crack cocaine for further distribution. In addition, during trial the Government played a number of recorded phone conversations between Ford and Bass, and Ford deciphered for the jury the "code" the men used in an attempt to surreptitiously discuss their drug transactions.

There can be no question that this and other evidence provided an adequate foundation to sustain the jury's finding of guilt. Bass's protestations to the contrary consist predominately of attacks on the credibility of his former compatriots who testified at trial, each of whom had reached a plea agreement with the Government. While information such as this is "highly relevant in assessing the credibility of the witnesses," United States v. Cabrera, No. 96-3972, 1997 WL 367310, at *2 (8th Cir.

---

[1]The other conspirator who appeared at trial, Anthony Branch, offered testimony which at best could be viewed as marginally beneficial to the prosecution.

-4-

July 7, 1997), evaluating the comparative trustworthiness of testimony is an endeavor for the jury, and not us, to undertake, see United States v. Wright, No. 96-2978, 1997 WL 377833, at *3 (8th Cir. July 10, 1997)("[I]t is the sole province of the jury to weigh the credibility of a witness." (quotation omitted)).  Bass's able trial attorney seized upon every available opportunity to point out to the jury that individual prosecution witnesses might have harbored a self-interested motivation to bolster the Government's case.  That the jury rejected defense counsel's overtures, choosing rather to credit the disputed testimony, is not for us to review.

Bass also emphasizes that he was gainfully employed during the time of the conspiracy and that police officers did not confiscate any drugs or large sums of money from his person or belongings.  Nonetheless, though lack of employment and the presence of drugs or large amounts of cash often serve to strengthen an inference that a defendant was dealing in contraband, the absence of any one, or all, of these factors in a given trial does not by any means necessitate an acquittal.  Stated simply, the fact that the case against Bass might have been more ironclad does nothing to diminish the evidence which the Government did, in fact, introduce.  Bass no doubt would have benefitted had the jury deemed the Government's case irreparably suspect due to a dearth of circumstantial evidence connecting him to drug transactions, but the jury's failure to live up to Bass's wishful thinking does not represent a constitutional violation.  See Wright, 1997 WL 377833, at *3 (mentioning that conviction only upon proof beyond a reasonable doubt is required by the Due Process Clause of the Constitution).

In the final analysis, Bass's multifaceted criticism of the case against him must succumb to the fact that the quantum of evidence introduced at trial, though perhaps not of the highest caliber, was more than sufficient to allow the jury to return a guilty verdict. We cannot say "that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements," Ivey, 915 F.2d at 383, and we must therefore affirm his conviction.

## 2. "Other crimes" evidence

Bass asserts that the district court abused its discretion when it allowed the Government to elicit testimony from Santanus Chambers concerning certain narcotics transactions Bass had entered into with him.  In a related vein, Bass insists that the court committed error when it permitted the introduction of a recorded telephone conversation in which he discussed a drug deal with Ford.  According to Bass, the admission of this evidence ran afoul of Rule 404(b) of the Federal Rules of Evidence, because through its introduction the prosecution intended to demonstrate that he had committed other crimes and was thus prone to engage in the criminal offense contained in the indictment.

Were Bass's characterization of the matter correct, this ground for reversal would, if nothing else, give us pause. It is axiomatic that "Rule 404(b) excludes evidence of other crimes or bad acts when offered to prove character in order to show action in conformity therewith."  United States v. Falls, No. 96-2491, 1997 WL 352314, at *2 (8th Cir. June 27, 1997); see also Fed. R. Evid. 404(b).  This type of evidence is, however, "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).  Even then, the district court should approve introduction of a defendant's other crimes or bad acts only if (1) the evidence is relevant to a material issue, (2) the other crime or bad act is reasonably similar in kind and close in time to the crime charged, (3) the evidence is sufficient to support a jury finding that the defendant committed the other crime or bad act, and (4) the probative value of the evidence outweighs its prejudicial effect.  See United States v. Emmanuel, 112 F.3d 977, 981 (8th Cir. 1997).

As it happens, though, we need not apply the legal doctrines developed under Rule 404(b).  This is because our inspection of the record has revealed that the district court did not view the evidence as representative of other crimes or bad acts, but

instead thought it bore directly upon Bass's participation in the very conspiracy described in the indictment. See Trial Tr. at 186 ("I specifically find that [Chambers's testimony is] not 404(b) type evidence, that it's evidence bearing directly upon the conspiracy . . . ."); id. at 195 ("[T]he evidence [of the phone conversation between Ford and Bass] is admissible [as] . . . proof again of the existence of the conspiracy."). We agree with this assessment of the evidence, and we thus conclude that it did not involve another "crime or bad act" which might otherwise have been subject to exclusion under Rule 404(b). The deals Bass negotiated with Chambers and discussed with Ford were part and parcel of the conspiracy with which Bass was charged, and the district court did not commit an abuse of discretion by authorizing introduction of the challenged evidence.[2] See Fed. R. Evid. 401-403; United States v. Gibson, 105 F.3d 1229, 1235 (8th Cir. 1997)("In the context of a conspiracy trial, district courts have particularly broad discretion in determining the nature of evidence to be admitted." (quotation omitted)).

### 3. Inadmissible hearsay

Bass also declares that the court exposed the jury to inadmissible hearsay when it allowed James Slosson, a special agent with the Bureau of Alcohol, Tobacco, and Firearms, to testify about certain remarks made by Antonio Nelson during an undercover drug buy. We summarily reject this argument, however, because the testimony was clearly allowable as descriptive of a statement made by one of Bass's coconspirators during the course of and in furtherance of the conspiracy. See Fed. R. Evid. 801(d)(2)(E); United States v. Darden, 70 F.3d 1507, 1529-30 (8th Cir. 1995),

---

[2]Even if the district court had abused its discretion, the error would have been harmless in light of other evidence establishing Bass's guilt. See Fed. R. Crim. P. 52(a); Falls, 1997 WL 352314, at *2 ("An evidentiary error amounts to harmless error if, after viewing the entire record, we are convinced that no substantial rights of the defendant were affected and that the error had no, or only very slight, influence on the verdict.").

cert. denied, 116 S. Ct. 1449, and cert. denied, 116 S. Ct. 2567 (1996).  As a result, Nelson's out of court statement is "not hearsay" under the Federal Rules of Evidence. Fed. R. Evid. 801(d)(2)(E).

### 4.  Sentencing issue

Bass's final allegation on appeal is that the district court committed error when it refused to depart downward in order to mitigate the harsh 100-to-1 ratio between sentences for crack and powder cocaine.  Bass recognizes that we have rejected this and similar arguments time and time again.  See, e.g., United States v. Johnson, 108 F.3d 919, 922 (8th Cir. 1997)(mentioning that we have repeatedly upheld the constitutionality of U.S.S.G. § 2D1.1); United States v. Higgs, 72 F.3d 69, 70 (8th Cir. 1995)(holding that district court did not commit error in refusing to depart downward based on 100-to-1 ratio).  Still, he "respectfully disagrees" with our previous decisions and suggests that it is our "duty to declare that the punishment for crack versus powder cocaine is repugnant and unjust."  Bass's Br. at 14.

We are sympathetic toward Bass's entreaties, but it is not for us to reverse a well-established pattern of this Court's case law.  A single panel cannot effectuate a change in our approach to the 100-to-1 ratio; such action can originate only from the Court en banc.  See Johnson, 108 F.3d at 922.  Bound by our prior opinions, we hold that the district court did not commit error when it denied Bass's motion for a downward departure.

### B.  Wakefield

Wakefield contests only one component of the sentence the district court imposed after accepting his guilty plea.  Namely, he claims that the district court abused its discretion when it placed special conditions on his supervised release which absolutely prohibit him from obtaining or consuming alcohol, subject him to testing to

detect the presence of alcohol in his body, and require him to submit to warrantless searches for alcohol. The particular provisions to which Wakefield objects read as follows:

> 1)   Paragraph 8 of the standard conditions of supervision is modified, i.e., instead of merely refraining from excessive use of alcohol, the defendant shall not purchase or possess, use, distribute, or administer any alcohol, just the same as any other narcotic or controlled substance.

> *   *   *

> 3)   The defendant shall submit to and pay for a drug test within fifteen (15) days of release on supervised release and at least two (2) periodic drug tests thereafter for use of a controlled substance and shall further submit to and pay for such testing as any person involved in supervising the defendant's supervised release may request to detect the presence of alcohol or controlled substances in the defendant's body fluids and to determine whether the defendant has used any of them.

> 4)   The defendant shall be subject to search and seizure of the defendant's premises, vehicle or person, day or night, with or without a warrant, at the request of any person involved in supervising the defendant's supervised release to determine the presence of alcoholic beverages or controlled substances; any such person may make such a request with or without the cooperation of law enforcement officers.

Judgment including Sentence at 3.

It is fundamental that a district judge has wide discretion in formulating the terms of supervised release. See United States v. Schoenrock, 868 F.2d 289, 291 (8th Cir. 1989). Nevertheless, this discretion is not unfettered. The United States Sentencing Commission, duplicating and consolidating language contained in relevant statutes, has instructed that conditions of supervised release must be "reasonably related to (1) the nature and circumstances of the offense and the history and characteristics of the

defendant, and (2) the need . . . to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." U.S. Sentencing Guidelines Manual § 5D1.3(b) (1995); see also 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(D), 3583(d) (1994). Furthermore, the terms of supervised release cannot inflict a "'greater deprivation of liberty than is reasonably necessary' to effectuate the goals of Congress and the Sentencing Commission." United States v. Prendergast, 979 F.2d 1289, 1293 (8th Cir. 1992)(quoting 18 U.S.C. § 3583(d)(2)). "Conditions that restrict a probationer's freedom must be especially fine tuned." Id. (quotation and alteration omitted).

In Prendergast, we addressed the propriety of the district court's imposition of conditions substantially similar to those involved in the case sub judice. See id. at 1292-93. We deemed the terms of supervised release to be inappropriate because they did "not reasonably relate to the goals of rehabilitation and protection." Id. at 1293. Essential to this holding was our observation that there was "no evidence indicating that [the defendant] suffer[ed] from alcoholism or that the use of alcohol in any way contributed to the commission of the offense for which he was sentenced." Id. Accordingly, we directed the district court on remand to eliminate the conditions which completely prohibited the defendant from possessing or consuming alcohol and which subjected him to warrantless searches for the substance. See id.; cf. United States v. Stoural, 990 F.2d 372, 372-73 (8th Cir. 1993)(per curiam)(vacating virtually identical provisions imposed as special conditions of probation).

We believe that this appeal is controlled by the reasoning we employed in Prendergast. Similar to the situation in that case, there was no evidence before the district court suggesting that Wakefield abused alcohol or that the use of alcohol played a role in the crime to which he pleaded guilty. Cf. Sentencing Recommendation at 2 ("[T]here is no indication that Mr. Wakefield has a history of alcohol abuse."). True, Wakefield admitted that beginning in 1987 he "smoke[d] marijuana approximately

twice per week until his arrest in [the] instant offense," and he also acknowledged that he had "imbibed alcohol on weekends since the age of 18." Presentence Investigation Report at 12. The district court relied on these concessions in levying the restrictions at issue, explaining:

> [T]he reason I've imposed the restriction with regard to the alcohol is that if he's cut off on controlled substances, the easy thing, of course, to substitute for it is alcohol. Anybody who is drug dependent can have a tendency, if one particular drug is cut off, to use some other drug. And so I want the record to reflect that's the reason I've imposed that provision or those terms as part of the supervised release.

Sentencing Tr. at 23.

We certainly appreciate the concerns which animated the district court, but we do not think the court's explanation is adequate to remove this case from the reach of Prendergast. Notably, while it is beyond cavil that Wakefield used marijuana on a somewhat regular basis, there was no evidence before the district court that he was "drug dependent." It is, to say the least, disturbing to learn that a young person has taken up the practice of smoking marijuana "approximately twice per week," but we cannot conclude that this level of consumption is so facially excessive to compel a finding that the person must have a dependency problem. By the same token, we believe it was incorrect for the district court to simply assume that Wakefield would as a matter of course replace alcohol for marijuana.[3] Indeed, even if this substitution did occur, it would not, under the circumstances, be entirely unwelcome. Though we share what appears to be the district court's desire to completely wean Wakefield and other defendants from intoxicating substances, we know that, realistically speaking, this

---

[3]Of course, it would be a different case altogether if the Government had presented cogent evidence indicating that Wakefield's marijuana usage did render him drug dependent or that he would assuredly abuse alcohol if deprived of his drug of choice.

-11-

optimal result cannot be achieved in every case. It seems to us, however, that societal goals will be met if fear of retribution and further punishment causes convicts who at one time used illicit drugs to switch to moderate and responsible alcohol consumption. In this way, at least in one sense, the system converts criminals to law abiding citizens.

At sentencing, the district court encountered a young man who had been convicted of a drug trafficking crime and whose admitted possession of marijuana had previously led to several minor run-ins with Nebraska authorities. Although these factors were understandably troubling to the district court, the multiple conditions of supervised release designed to prevent Wakefield from possessing or using narcotics will hopefully serve to deter him, upon release from prison, from returning to his illegal ways. Similarly, the prohibition on excessive use of alcohol should cause him to refrain from immoderate consumption of that intoxicant. In light of these facts, and because the district court did not have before it evidence sufficient to support a finding that Wakefield is prone to <u>abuse</u> alcohol or that alcohol had any part in the commission of the offense to which he pleaded guilty, we determine that the supervised release terms which Wakefield finds objectionable are not "reasonably relate[d] to the goals of rehabilitation and protection." <u>Prendergast</u>, 979 F.2d at 1293.

For these reasons, we vacate the district court's imposition of the conditions of supervised release which completely preclude Wakefield from possessing or consuming alcohol, subject him to testing to detect the presence of alcohol in his body, and require him to submit to warrantless searches for alcohol.[4] We instruct the district court, on

---

[4]We have studied cases affirming conditions similar to those discussed here, and we find them to be easily distinguishable. <u>See</u> <u>United States v. Wesley</u>, 81 F.3d 482, 484 (4th Cir. 1996)(adjudging <u>Prendergast</u> to be inapposite where defendant "had been previously convicted of being intoxicated and disruptive, had been previously convicted of driving under the influence, had tested positive for drugs many times, and had just beaten his wife mercilessly (with a steel-toed boot and a lamp) after getting drunk on

remand, to eliminate these terms, but we leave it to the court's discretion whether to retain other conditions which are in accord with the law of this Circuit.

## III. CONCLUSION

We affirm Bass's conviction and sentence, but we vacate portions of Wakefield's sentence and remand for proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

whiskey and beer" (citations omitted)); United States v. Thurlow, 44 F.3d 46, 47 (1st Cir.)("Thurlow comes from a family with an active history of alcohol abuse and his record indicated that substance abuse was and continued to be a serious problem for him."), cert. denied, 115 S. Ct. 1987 (1995); United States v. Johnson, 998 F.2d 696, 699 (9th Cir. 1993)("In sentencing [the defendant], the district court was faced with a long history of substance abuse and violent aggression.").