# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1592

_____

United States of America,

      Appellee,

v.

Delores Mosley,

      Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Northern District of Iowa.
\*
\*
\*

_____

Submitted: October 20, 2011
Filed: March 6, 2012

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Delores Mosley pleaded guilty to unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g). At sentencing, when calculating the advisory sentencing guideline range, the district court[1] applied a four-level increase pursuant to USSG § 2K2.1(b)(6) on the ground that Mosley possessed a firearm in connection with the state felony offense of "going armed with intent." Iowa Code § 708.8. The court also imposed, as a special condition of Mosley's

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

supervised release, a prohibition on the use of alcohol and the frequenting of bars, taverns, and other establishments whose primary source of income is derived from the sale of alcohol. Mosley challenges on appeal both the four-level enhancement and the special condition relating to alcohol. We affirm.

## I.

On November 15, 2009, at the behest of her fiancé, Stephany Hoskins walked outside her Waterloo, Iowa, home and discovered her sister, Delores Mosley. Mosley was in tears, declaring "I'm going to kill her" and "I'm tired of this and can't nobody talk me out of this." Hoskins returned inside and telephoned their mother, who told her that Mosley was distraught. Mosley had learned that her granddaughter had caught her hair on fire while Erica, the girl's mother and Mosley's daughter, was at home passed out.

Hoskins contacted Waterloo law enforcement authorities to inform them of Mosley's threats against Erica and of the possibility that Mosley was carrying a firearm. Officers arrived at Hoskins's home, but Mosley was gone. Responding to an update from dispatch on Mosley's location, the officers continued to a nearby address, the home of Mosley's niece, where they found Mosley sitting on the front steps, crying.

The officers approached Mosley and asked her if she had a gun. She answered that she had one in her front coat pocket but was unsure whether it was loaded. The officers recovered a .32 caliber revolver from Mosley's pocket, and determined that it was loaded with three bullets. Mosley admitted that she had no permit for the gun, and claimed that she had found it three weeks earlier while raking leaves in her backyard. She also expressed frustration with her daughter's neglectful parenting and told the officers that "she had brought her daughter into the world and she could take her out."

Mosley was arrested on July 28, 2010. She had sustained a prior felony conviction in 1989 for second degree theft, and she eventually pleaded guilty in this case to unlawful possession of a firearm as a previously convicted felon. 18 U.S.C. § 922(g). In calculating the advisory guideline sentencing range, the district court found that Mosley was subject to a four-level increase under USSG § 2K2.1(b)(6)(B), because she had possessed a firearm "in connection with another felony offense." Specifically, the court found that Mosley had violated Iowa Code § 708.8, which provides that "[a] person who goes armed with any dangerous weapon with the intent to use without justification such weapon against the person of another" commits the felony of "going armed with intent." The increase yielded an advisory guideline range of 18 to 24 months, and the court sentenced Mosley to a term of 18 months' imprisonment, a $100 special assessment, and two years of supervised release. The district court also ordered several special conditions on Mosley's supervised release. The second of these conditions prohibits Mosley from using alcohol or entering bars, taverns, or other establishments whose primary source of income is derived from the sale of alcohol.

## II.

Mosley first argues that the district court committed procedural error in calculating her advisory guideline range. She challenges the four-level increase under USSG § 2K2.1(b)(6) for possession of a firearm in connection with another felony offense. We review this finding for clear error, *United States v. Bates*, 614 F.3d 490, 493 (8th Cir. 2010), and consider whether Mosley's actions supported the district court's finding that she committed going armed with intent under Iowa Code § 708.8.

In *United States v. Gomez-Hernandez*, 300 F.3d 974, 980 (8th Cir. 2002), this court, applying *State v. Slayton*, 417 N.W.2d 432 (Iowa 1987), determined that Iowa Code § 708.8 "requires proof that the defendant carried a dangerous weapon with the

-3-

specific intent to use it to inflict serious injury." *Gomez-Hernandez*, 300 F.3d at 980. Mosley asserts that her conduct did not violate § 708.8 because she lacked "the specific intent to use" her gun against her daughter.

The district court did not clearly err in finding that Mosley acted with the requisite intent. Although Mosley's conduct was not as extreme as that in *Slayton*, where the defendant chased after his mother with a loaded shotgun until his father subdued him with a club, 417 N.W.2d at 435, the district court had sufficient grounds to find that Mosley carried a handgun with specific intent to use the weapon against her daughter. Upset at her daughter and carrying a loaded revolver, Mosley announced, "I'm going to kill her," and, "I'm tired of this and can't nobody talk me out of this." By the time the officers found her, Mosley had traveled a mile from her sister's home to a location only a block and a half away from her daughter's residence. She also told police that "she had brought her daughter into the world and she could take her out." In light of these circumstances, it was not clear error for the district court to conclude that Mosley exhibited specific intent to inflict serious injury.

III.

Mosley also contests the special condition of supervised release that she is prohibited from the use of alcohol and from entering bars, taverns, or other establishments whose primary source of income is derived from the sale of alcohol. Sentencing courts have broad discretion in setting the terms of supervised release, and we review the imposition of special conditions for abuse of that discretion. *United States v. Forde*, 664 F.3d 1219, 1222 (8th Cir. 2012). Special conditions must be "reasonably related" to the nature and circumstances of the offense and the sentencing factors in 18 U.S.C. § 3553(a), and the conditions may not impose a "greater deprivation of liberty than is reasonably necessary" to serve the purposes of sentencing. 18 U.S.C. § 3583(d).

The presentence report describes Mosley's history of substance abuse. It reflects Mosley's report to the probation office that she used marijuana daily for ten years from 1988 to 1998. She abused crack cocaine daily for eight months in 1990 at the age of 30. She underwent inpatient substance abuse treatment in November and December 1988 and participated in outpatient treatment for approximately two years thereafter. Mosley reported that her last use of crack cocaine was in 1990. She described herself as a "social drinker for special occasions only," and estimated that her last use of alcohol was two weeks before her presentence interview with the probation office. She was convicted in 1998, however, of operating a motor vehicle while intoxicated in May 1997. At the time of her arrest in 1997, Mosley failed to yield to law enforcement for approximately three miles and could not walk or stand when finally apprehended.

The record also shows a history of mental health issues. In 1991, Mosley attempted suicide by overdose on sleeping pills and was diagnosed as suffering from a major depressive order. In 2003, she was evaluated at a mental health center and diagnosed with "depressive disorder, anxiety disorder, cannabis use, and history of cocaine abuse." She has been prescribed anti-depressant medications since 2001, and was prescribed the anti-depressant medications fluoexetine (Prozac) and amitriptyline at the time of sentencing.

In overruling Mosley's objection to the special condition, the district court explained that Mosley "has a drug and alcohol past, with the use of a number of illegal substances," observed that "[t]here is a cross-addiction" between drugs and alcohol, and cited Mosley's history of "mental health issues." The court advised Mosley that if she feels that she has "things under control" when she is released from prison, then "she can always talk to her probation officer and see if those can be modified or ask for a modification."

In challenging the district court's ruling, Mosley relies principally on two decisions of this court from the 1990s that vacated special conditions prohibiting the use of alcohol. In *United States v. Prendergast*, 979 F.2d 1289 (8th Cir. 1992), the court vacated the condition for a defendant convicted of wire fraud, citing the absence of any finding that alcohol was a contributing cause of the crime or that the defendant needed any substance abuse rehabilitation. *Id.* at 1293. In *United States v. Bass*, 121 F.3d 1218 (8th Cir. 1997), the court vacated a prohibition on alcohol use for a defendant convicted of drug trafficking, even though the defendant smoked marijuana twice per week, because there was no evidence that he was "drug dependent," and the district court had "simply assume[d] that [the defendant] would as a matter of course replace alcohol for marijuana." *Id.* at 1224.

The precedential force of *Bass* and *Prendergast* is limited. In *United States v. Behler*, 187 F.3d 772 (8th Cir. 1999), this court upheld an alcohol ban for a drug trafficking defendant who had abused drugs for twenty years, even though he had discontinued drug use approximately eight or nine years before sentencing, where the district court received evidence from the National Institute on Drug Abuse that "the use of any intoxicants, including alcohol, limits a recovering person's ability to maintain a drug-free lifestyle." *Id.* at 779 (internal quotation omitted). This court explained that *Prendergast* and *Bass* limit a district court's discretion "only insofar as the court imposes limitations on the basis of pure speculation or assumptions unrelated to the rehabilitative process." *Id.*; *accord Forde*, 664 F.3d at 1223; *United States v. Crose*, 284 F.3d 911, 913 (8th Cir. 2002) (per curiam). Just recently, we remarked that "the sentencing landscape has changed substantially since *Bass*," because that decision "predates the Supreme Court's series of sentencing cases emphasizing a sentencing court's broad discretion in crafting an individualized sentence." *Forde*, 664 F.3d at 1223. Although *Bass* purported to apply abuse-of-discretion review, its refusal to accept the district court's conclusions that a defendant who used marijuana twice per week for eight years was "drug dependent," and that such a person can have a tendency to substitute alcohol for marijuana if the latter is

unavailable, functioned more like *de novo* review.  *See Gall v. United States*, 552 U.S. 38, 56 (2007) ("Although the Court of Appeals correctly stated that the appropriate standard of review was abuse of discretion, it engaged in an analysis that more closely resembled *de novo* review of the facts presented . . . .").

Applying the deferential abuse-of-discretion standard that applies to all sentencing decisions, *id*. at 52, we conclude that the combination of substance abuse and mental health histories appearing in Mosley's record are sufficient to justify the district court's imposition of a condition prohibiting the use of alcohol.  Mosley had a documented history of abusing alcohol and crack cocaine, albeit more than a decade before the offense of conviction.  She also used marijuana daily for ten years, and while she reported no drug use since 1998, the district court had reason to be skeptical:  a mental health evaluation in 2003 diagnosed "cannabis abuse" along with "history of cocaine abuse."  As in *Behler*, it was reasonable for the district court to treat Mosley as a recovering drug user, and our cases permit a sentencing court to recognize that "the use of alcohol limits a recovering person's ability to maintain a drug-free lifestyle."  *Forde*, 664 F.3d at 1224 (internal quotations omitted); *accord Crose*, 284 F.3d at 913; *Behler*, 187 F.3d at 779.  On top of that, Mosley was diagnosed with depressive disorders in 1991 and 2003, attempted suicide in 1991, and had been prescribed anti-depressant medications from 2003 through sentencing.  Allowing for some use of "judicial common sense," *Forde*, 664 F.3d at 1224 (internal quotation omitted), we believe the district court reasonably concluded that mixing a depressant like alcohol with a mental health condition of depression and anti-depressant medications may well interfere with Mosley's rehabilitation upon release from custody.  *See United States v. Sales*, 476 F.3d 732, 735 (9th Cir. 2007) (upholding prohibition on consuming alcohol, although defendant had no history of alcohol abuse and offense did not involve alcohol, where the record showed a history of substance abuse and depression); *see also Amitriptyline Concise Monograph*, Physicians' Desk Reference, PDR.net, http://www.pdr.net/drugpages/ concisemonograph.aspx?concise=119 (last visited Feb. 21, 2012) (identifying

amitriptyline, one of Mosley's medications, as a "tricyclic antidepressant," and explaining that amitriptyline "[m]ay enhance response to alcohol . . . and other CNS depressants"); *Purkey v. Green*, 28 F. App'x 736, 742 n.4 (10th Cir. 2001) (taking judicial notice of drug information from Physicians' Desk Reference).

As noted, the district court advised Mosley that she could seek modification of the conditions while on supervised release. We have no reason to doubt that the court would give such a motion appropriate consideration if Mosley's mental health and substance abuse are "under control."

\*     \*     \*

The judgment of the district court is affirmed.

BYE, Circuit Judge, concurring in part and dissenting in part.

I agree the district court did not commit a procedural error in calculating Mosley's advisory guideline range. I disagree, however, with the majority's conclusion the district court did not abuse its discretion in imposing a special condition of supervised release prohibiting Mosley from using any alcohol and from entering bars, taverns, or other establishments whose primary source of income is derived from the sale of alcohol. Therefore, I respectfully dissent.

We recently observed our cases reviewing special conditions of supervised release imposing complete bans on alcohol "have yielded mix results." United States v. Simons, 614 F.3d 475, 480 (8th Cir. 2010). "In general, we have upheld such bans for defendants with substance-abuse problems." Id. We have reversed such bans, however, for defendants whose "history or crime of conviction did not support a complete ban on alcohol." Id. The record here indicates alcohol did not play a role in Mosley's crime of conviction. The district court acknowledged as much by stating

it had no information "alcohol played any role in [Mosley's] offense." Sentencing Tr. at 27. The question thus becomes whether Mosley's history justifies the district court's prohibition against the use of alcohol and the entering of bars or taverns. I cannot say it does.

The majority first asserts Mosley's "documented history of abusing alcohol" weighs in favor of upholding the district court's total ban on alcohol. See ante, at p. 8. The record, however, shows otherwise. The record contains exactly two references to alcohol, neither of which amounts to a history of alcohol abuse. The record shows Mosley described herself as a "social drinker for special occasions only" and stated she first consumed alcohol at age twenty five. PSR, at ¶ 49. Surely, the majority is not equating "social drinking" with "a documented history of abusing alcohol." Thus, the only other reference that could possibly support the majority's statement is Mosley's 1998 conviction for driving while intoxicated.[2] But a thirteen-year-old, isolated conviction, which did not even count toward the computation of Mosley's criminal history points, hardly amounts to a "history of abusing alcohol," and in the absence of any other evidence indicating a pattern of alcohol abuse, the record does not support the district court's finding Mosley has an "alcoholic past." Sentencing Tr. at 31.

In concluding the record justifies a total ban on alcohol, including a ban on entering bars or taverns, the majority also relies on Mosley's history of substance abuse. And to be sure, Mosley admitted to using marijuana daily for ten years, from 1988 to 1998, and to using crack cocaine for eight months in 1990. Mosley's last reported use of marijuana, however, was over a decade ago and her last use of crack cocaine was over twenty years before the sentencing hearing in this case. Despite this

---

[2]According to the PSR, Mosley's vehicle was stopped on May 18, 1997 after Mosley failed to yield to law enforcement. ¶ 32. The complaint indicated she admitted to consuming alcohol and failed the administered field sobriety tests, but refused to submit to chemical testing. Id.

temporal gap, the majority concludes the district court could reasonably prohibit Mosley from using alcohol and entering bars or taverns for the purpose of ensuring Mosley continues to be drug-free.

Citing to United States v. Behler, 187 F.3d 772 (8th Cir. 1999), the majority states the district court was justified in imposing a total ban on alcohol, even though Mosley stopped using illegal substances over a decade ago. But as the majority itself notes, the evidence before the district court in Behler was different from the record evidence in this case. In Behler, the district court received a sentencing recommendation from the probation officer, indicating the use of alcohol would limit the defendant's ability "to maintain a drug-free lifestyle." Id. at 779. Moreover, the probation officer's recommendation was based on data from the National Institute on Drug Abuse, explaining "the use of any intoxicants, including alcohol, limits a recovering person's ability to maintain a drug-free lifestyle." Id. The record further established "any use of alcohol is inconsistent with the treatment philosophy of most substance abuse recovery programs nationwide." Id. Based on the evidence before the district court, we upheld the total ban on alcohol, noting the district court had before it "the necessary foundation for determining that any alcohol use would hinder the defendant's rehabilitation process." Id.

No such foundation is present here. Rather, the district court's decision to impose a total ban on alcohol is "based on nothing more than an assumption." Compare id. (upholding a total ban on alcohol where the evidence before the district court established the defendant was drug dependent), with United States v. Bass, 121 F.3d 1218, 1223-24 (8th Cir. 1997) (reversing a total ban on alcohol where there was no evidence the defendant was drug dependent and the district court "simply assume[d] that [the defendant] would as a matter of course replace alcohol for marijuana"). As articulated by the district court at sentencing, the court's decision to impose the total ban on alcohol was based on the following:

Well, [Mosley] has a drug and alcohol past, with the use of a number of illegal substances. There is a cross-addiction, and so I'm going to stick by those special assessments – or those special conditions of her supervised release. I think it would be well for her to obviously abide by those unless overturned at the Circuit. Or if she feels like when she comes out of prison that she's got things under control, she can always talk to her probation officer and see if those can be modified or ask for modification. She also has had mental health issues, and I think that she should carefully consider whether or not to challenge those conditions. I think she would do much better on supervision if she has those additional resources available given her history.

Sentencing Tr. at 31.

The explanation given by the district court is precisely the type of pure speculation we must not tolerate. The record before the court contained no evidence establishing the possible effect of alcohol on a person who—it bears repeating—had maintained a drug-free lifestyle for years. The record contained no evidence linking alcohol to Mosley's specific mental health issues. Yet, despite the lack of such evidence, the majority concludes the district court could reasonably determine a total ban on alcohol was necessary.

Relying on our recent decision in United States v. Forde, 664 F.3d 1219 (8th Cir. 2012), the majority asserts it is within the sentencing court's discretion "to recognize that 'the use of alcohol limits a recovering person's ability to maintain a drug-free lifestyle.'" Ante, at 7 (quoting Forde, 664 F.3d at 1224). Forde, however, is factually distinguishable. Unlike the record here, the record before the district court in Forde established the defendant was drug dependent. 664 F.3d at 1223. By his own admission, the Forde defendant used marijuana daily for thirteen years—up until the commission of the crime of conviction—and continued to abuse drugs even after participating in a drug treatment program. Id. It was within this context that we concluded the district court's finding cross addiction posed a threat to the defendant's rehabilitation was not pure speculation. Id. at 1224. But unlike the defendant in

-11-

Forde, Mosley last used marijuana over a decade ago and stopped using crack cocaine in 1990—more than twenty years ago—after successfully completing an inpatient drug treatment program. In fact, the PSR indicates that following her release from the program, Mosley volunteered as a motivational, successful recovery speaker at the treatment center. And in the absence of any record evidence rendering Mosley drug dependent, I remain convinced the district court's determination cross addiction posed a threat to Mosley's rehabilitation was based on nothing more than an assumption.

I also cannot agree the district court's reliance on Mosley's history of mental health issues justifies the imposition of the special condition here. "Allowing for some use of 'judicial common sense,'" the majority states, the district court could reasonably conclude the use of alcohol may interfere with Mosley's rehabilitation following her release. Ante, at 7 (quoting Forde, 664 F.3d at 1224). Ironically, the majority then refers to Amitriptyline Concise Monograph, Physician's Desk Reference, to explain the possible effect of alcohol on persons taking amitriptyline[3], one of Mosley's prescribed medications. See ante, at 7-8. While such knowledge may well be within the realms of a physician's common sense, I highly doubt it qualifies as "judicial common sense." Again, the record contains no evidence linking alcohol to Mosley's amitriptyline medication and the district court's reliance on Mosley's mental health as a basis for prohibiting her from using alcohol and entering bars or taverns is therefore pure speculation.

Finally, the majority omits the fact Mosley's standard conditions of supervised release require her to "refrain from the excessive use of alcohol" and prohibit her from purchasing, possessing, or using any controlled substance. It seems to me these

---

[3]While the PSR indicates Mosley has been prescribed anti-depressant medications since 2001, it does not list the specific medications. PSR, at ¶ 48. Rather, the PSR provides a general list of Mosley's current prescriptions, including a prescription for 25 mg of Amitriptyline. Id. at ¶ 43. Nothing in the PSR indicates Amitriptyline is an anti-depressant.

-12-

requirements are sufficient to alleviate any concerns the district court might have had about Mosley's past use of illegal substances or her ability to maintain a drug-free lifestyle in the future. See, e.g., United States v. Walters, 643 F.3d 1077, 1080 n.2 (8th Cir. 2011) ("We note [the defendant] must still abide by all the standard conditions of supervised release, which includes a restriction on any 'excessive use of alcohol.'").

Based on the record, I would find the district court abused its discretion in imposing a special condition of supervised release prohibiting Mosley from using any alcohol and from entering bars, taverns, or other establishments whose primary source of income is derived from the sale of alcohol. Therefore, I would vacate the condition and remand for resentencing.

_____