*588 COLLOTON, Circuit Judge.
Delores Mosley pleaded guilty to unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g). At sentencing, when calculating the advisory sentencing guideline range, the district court[1] applied a four-level increase pursuant to USSG § 2K2.1(b)(6) on the ground that Mosley possessed a firearm in connection with the state felony offense of “going armed with intent.” Iowa Code § 708.8. The court also imposed, as a special condition of Mosley’s supervised release, a prohibition on the use of alcohol and the frequenting of bars, taverns, and other establishments whose primary source of income is derived from the sale of alcohol. Mosley challenges on appeal both the four-level enhancement and the special condition relating to alcohol. We affirm.
I.
On November 15, 2009, at the behest of her fiancé, Stephany Hoskins walked outside her Waterloo, Iowa, home and discovered her sister, Delores Mosley. Mosley was in tears, declaring “I’m going to kill her” and “I’m tired of this and can’t nobody talk me out of this.” Hoskins returned inside and telephoned their mother, who told her that Mosley was distraught. Mosley had learned that her granddaughter had caught her hair on fire while Erica, the girl’s mother and Mosley’s daughter, was at home passed out.
Hoskins contacted Waterloo law enforcement authorities to inform them of Mosley’s threats against Erica and of the possibility that Mosley was carrying a firearm. Officers arrived at Hoskins’s home, but Mosley was gone. Responding to an update from dispatch on Mosley’s location, the officers continued to a nearby address, the home of Mosley’s niece, where they found Mosley sitting on the front steps, crying.
The officers approached Mosley and asked her if she had a gun. She answered that she had one in her front coat pocket but was unsure whether it was loaded. The officers recovered a .32 caliber revolver from Mosley’s pocket, and determined that it was loaded with three bullets. Mosley admitted that she had no permit for the gun, and claimed that she had found it three weeks earlier while raking leaves in her backyard. She also expressed frustration with her daughter’s neglectful parenting and told the officers that “she had brought her daughter into the world and she could take her out.”
Mosley was arrested on July 28, 2010. She had sustained a prior felony conviction in 1989 for second degree theft, and she eventually pleaded guilty in this case to unlawful possession of a firearm as a previously convicted felon. 18 U.S.C. § 922(g). In calculating the advisory guideline sentencing range, the district court found that Mosley was subject to a four-level increase under USSG § 2K2.1(b)(6)(B), because she had possessed a firearm “in connection with another felony offense.” Specifically, the court found that Mosley had violated Iowa Code § 708.8, which provides that “[a] person who goes armed with any dangerous weapon with the intent to use without justification such weapon against the person of another” commits the felony of “going armed with intent.” The increase yielded an advisory guideline range of 18 to 24 months, and the court sentenced Mosley to a term of 18 months’ imprisonment, a $100 *589 special assessment, and two years of supervised release. The district court also ordered several special conditions on Mosley’s supervised release. The second of these conditions prohibits Mosley from using alcohol or entering bars, taverns, or other establishments whose primary source of income is derived from the sale of alcohol.
II.
Mosley first argues that the district court committed procedural error in calculating her advisory guideline range. She challenges the four-level increase under USSG § 2K2.1(b)(6) for possession of a firearm in connection with another felony offense. We review this finding for clear error, United States v. Bates, 614 F.3d 490, 493 (8th Cir.2010), and consider whether Mosley’s actions supported the district court’s finding that she committed going armed with intent under Iowa Code § 708.8.
In United States v. Gomez-Hernandez, 300 F.3d 974, 980 (8th Cir.2002), this court, applying State v. Slayton, 417 N.W.2d 432 (Iowa 1987), determined that Iowa Code § 708.8 “requires proof that the defendant carried a dangerous weapon with the specific intent to use it to inflict serious injury.” Gomez-Hernandez, 300 F.3d at 980. Mosley asserts that her conduct did not violate § 708.8 because she lacked “the specific intent to use” her gun against her daughter.
The district court did not clearly err in finding that Mosley acted with the requisite intent. Although Mosley’s conduct was not as extreme as that in Slayton, where the defendant chased after his mother with a loaded shotgun until his father subdued him with a club, 417 N.W.2d at 435, the district court had sufficient grounds to find that Mosley carried a handgun with specific intent to use the weapon against her daughter. Upset at her daughter and carrying a loaded revolver, Mosley announced, “I’m going to kill her,” and, “I’m tired of this and can’t nobody talk me out of this.” By the time the officers found her, Mosley had traveled a mile from her sister’s home to a location only a block and a half away from her daughter’s residence. She also told police that “she had brought her daughter into the world and she could take her out.” In light of these circumstances, it was not clear error for the district court to conclude that Mosley exhibited specific intent to inflict serious injury.
III.
Mosley also contests the special condition of supervised release that she is prohibited from the use of alcohol and from entering bars, taverns, or other establishments whose primary source of income is derived from the sale of alcohol. Sentencing courts have broad discretion in setting the terms of supervised release, and we review the imposition of special conditions for abuse of that discretion. United States v. Forde, 664 F.3d 1219, 1222 (8th Cir.2012). Special conditions must be “reasonably related” to the nature and circumstances of the offense and the sentencing factors in 18 U.S.C. § 3553(a), and the conditions may not impose a “greater deprivation of liberty than is reasonably necessary” to serve the purposes of sentencing. 18 U.S.C. § 3583(d).
The presentence report describes Mosley’s history of substance abuse. It reflects Mosley’s report to the probation office that she used marijuana daily for ten years from 1988 to 1998. She abused crack cocaine daily for eight months in 1990 at the age of 30. She underwent inpatient substance abuse treatment in November and December 1988 and partid *590 pated in outpatient treatment for approximately two years thereafter. Mosley reported that her last use of crack cocaine was in 1990. She described herself as a “social drinker for special occasions only,” and estimated that her last use of alcohol was two weeks before her presentence interview with the probation office. She was convicted in 1998, however, of operating a motor vehicle while intoxicated in May 1997. At the time of her arrest in 1997, Mosley failed to yield to law enforcement for approximately three miles and could not walk or stand when finally apprehended.
The record also shows a history of mental health issues. In 1991, Mosley attempted suicide by overdose on sleeping pills and was diagnosed as suffering from a major depressive order. In 2003, she was evaluated at a mental health center and diagnosed with “depressive disorder, anxiety disorder, cannabis use, and history of cocaine abuse.” She has been prescribed anti-depressant medications since 2001, and was prescribed the anti-depressant medications fiuoexetine (Prozac) and amitriptyline at the time of sentencing.
In overruling Mosley’s objection to the special condition, the district court explained that Mosley “has a drug and alcohol past, with the use of a number of illegal substances,” observed that “[t]here is a cross-addiction” between drugs and alcohol, and cited Mosley’s history of “mental health issues.” The court advised Mosley that if she feels that she has “things under control” when she is released from prison, then “she can always talk to her probation officer and see if those can be modified or ask for a modification.”
In challenging the district court’s ruling, Mosley relies principally on two decisions of this court from the 1990s that vacated special conditions prohibiting the use of alcohol. In United States v. Prendergast, 979 F.2d 1289 (8th Cir.1992), the court vacated the condition for a defendant convicted of wire fraud, citing the absence of any finding that alcohol was a contributing cause of the crime or that the defendant needed any substance abuse rehabilitation. Id. at 1293. In United States v. Bass, 121 F.3d 1218 (8th Cir.1997), the court vacated a prohibition on alcohol use for a defendant convicted of drug trafficking, even though the defendant smoked marijuana twice per week, because there was no evidence that he was “drug dependent,” and the district court had “simply assume[d] that [the defendant] would as a matter of course replace alcohol for marijuana.” Id. at 1224.
The precedential force of Bass and Prendergast is limited. In United States v. Bekler, 187 F.3d 772 (8th Cir.1999), this court upheld an alcohol ban for a drug trafficking defendant who had abused drugs for twenty years, even though he had discontinued drug use approximately eight or nine years before sentencing, where the district court received evidence from the National Institute on Drug Abuse that “the use of any intoxicants, including alcohol, limits a recovering person’s ability to maintain a drug-free lifestyle.” Id. at 779 (internal quotation omitted). This court explained that Prendergast and Bass limit a district court’s discretion “only insofar as the court imposes limitations on the basis of pure speculation or assumptions unrelated to the rehabilitative process.” Id.; accord Forde, 664 F.3d at 1223; United States v. Grose, 284 F.3d 911, 913 (8th Cir.2002) (per curiam). Just recently, we remarked that “the sentencing landscape has changed substantially since Bass,” because that decision “predates the Supreme Court’s series of sentencing cases emphasizing a sentencing court’s broad discretion in crafting an indi *591 vidualized sentence.” Forde, 664 F.3d at 1223. Although Bass purported to apply abuse-of-discretion review, its refusal to accept the district court’s conclusions that a defendant who used marijuana twice per week for eight years was “drug dependent,” and that such a person can have a tendency to substitute alcohol for marijuana if the latter is unavailable, functioned more like de novo review. See Gall v. United States, 552 U.S. 38, 56, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (“Although the Court of Appeals correctly stated that the appropriate standard of review was abuse of discretion, it engaged in an analysis that more closely resembled de novo review of the facts presented....”).
Applying the deferential abuse-of-diseretion standard that applies to all sentencing decisions, id. at 52, 128 S.Ct. 586, we conclude that the combination of substance abuse and mental health histories appearing in Mosley’s record are sufficient to justify the district court’s imposition of a condition prohibiting the use of alcohol. Mosley had a documented history of abusing alcohol and crack cocaine, albeit more than a decade before the offense of conviction. She also used marijuana daily for ten years, and while she reported no drug use since 1998, the district court had reason to be skeptical: a mental health evaluation in 2003 diagnosed “cannabis abuse” along with “history of cocaine abuse.” As in Behler, it was reasonable for the district court to treat Mosley as a recovering drug user, and our cases permit a sentencing court to recognize that “the use of alcohol limits a recovering person’s ability to maintain a drug-free lifestyle.” Forde, 664 F.3d at 1224 (internal quotations omitted); accord Crose, 284 F.3d at 913; Behler, 187 F.3d at 779. On top of that, Mosley was diagnosed with depressive disorders in 1991 and 2003, attempted suicide in 1991, and had been prescribed anti-depressant medications from 2003 through sentencing. Allowing for some use of “judicial common sense,” Forde, 664 F.3d at 1224 (internal quotation omitted), we believe the district court reasonably concluded that mixing a depressant like alcohol with a mental health condition of depression and antidepressant medications may well interfere with Mosley’s rehabilitation upon release from custody. See United States v. Sales, 476 F.3d 732, 735 (9th Cir.2007) (upholding prohibition on consuming alcohol, although defendant had no history of alcohol abuse and offense did not involve alcohol, where the record showed a history of substance abuse and depression); see also Amitriptyline Concise Monograph, Physicians’ Desk Reference, PDR.net, http://www.pdr. net/drugpages/eoncisemonograph.aspx? concise=119 (last visited Feb. 21, 2012) (identifying amitriptyline, one of Mosley’s medications, as a “tricyclic antidepressant,” and explaining that amitriptyline “[m]ay enhance response to alcohol ... and other CNS depressants”); Purkey v. Green, 28 Fed.Appx. 736, 742 n. 4 (10th Cir.2001) (taking judicial notice of drug information from Physicians’ Desk Reference).
As noted, the district court advised Mosley that she could seek modification of the conditions while on supervised release. We have no reason to doubt that the court would give such a motion appropriate consideration if Mosley’s mental health and substance abuse are “under control.”
The judgment of the district court is affirmed.

. The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.