# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3952
_____

United States of America

*Plaintiff - Appellee*

v.

Craig Allen Thomas

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: November 13, 2017
Filed: February 28, 2018
[Unpublished]

_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Craig Allen Thomas was convicted of a drug-related offense and ultimately sentenced to 151 months' imprisonment and 5 years' supervised release. After his release from prison, Thomas violated conditions of his supervised release. He argues

the district court's[1] revocation sentence of an additional eleven months' imprisonment and three years' supervised release was an abuse of the district court's discretion. We affirm.

On May 29, 2015, Thomas began his five-year term of supervised release. On June 21, 2016, the district court added twenty hours of community service to his supervised release after he admitted to failing to submit two urine samples and driving without a valid license.

On October 4, 2016, the district court held a revocation hearing where Thomas admitted to failing to provide multiple urine samples, using marijuana, and failing to truthfully answer inquiries from his probation officer, all in violation of his supervised release. After failing to provide urine samples, the U.S. Probation Office placed Thomas on a sweat patch drug testing program. His first sweat patch tested positive for D methamphetamine, the illegal form of the drug. He told a probation officer his second sweat patch had fallen off. While he later admitted to intentionally removing the second sweat patch, he contested using D methamphetamine. The district court revoked Thomas's supervised release and sentenced him to eleven months' imprisonment and three years' supervised release.

At the revocation hearing, the government submitted the testimony of Dr. Leo Kadehjian regarding the general efficacy of sweat patches, as well as the laboratory results and the chain-of-custody documents for Thomas's first sweat patch. After Thomas's first sweat patch tested positive for methamphetamine, a confirmation test specifically identified the presence of D methamphetamine. The court also heard testimony from the officer who applied, as well as the officer who removed, the first sweat patch. Both officers testified as to their experience handling sweat patches and their use of standard protocol with Thomas. Still, as the district court noted,

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

"[r]egardless of whether he used methamphetamine or not, my decision would still be the same."[2]

Thomas argues the district court abused its discretion by revoking Thomas's supervised release and sentencing him to eleven months' imprisonment. A court may "revoke a term of supervised release" if the court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); see also United States v. Frosch, 758 F.3d 1012, 1014 (8th Cir. 2014) (per curiam). We review a court's "decision to revoke supervised release for abuse of discretion" and its underlying findings of fact for clear error. Frosch, 758 F.3d at 1014.

Although the court had sufficient evidence to revoke Thomas's sentence independent of a positive methamphetamine D result, we address Thomas's arguments in-turn. Thomas makes three arguments: (1) the sweat patch testing was procedurally flawed, in violation of 18 U.S.C. § 3583(d); (2) his conduct was consistent with the non-use of drugs; and (3) the court improperly delegated drug treatment and testing discretion to the U.S. Probation Office.

First, "sweat patch results are a generally reliable method of determining whether an offender has violated a condition of his or her probation." United States v. Meyer, 483 F.3d 865, 869 (8th Cir. 2007). Although Thomas cites 18 U.S.C. § 3583(d) as requiring a urine test to confirm the results of a drug test, he ignores the text after the "or" in the statute:

> A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques *or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy.*

---

[2] We understand this to mean the deliberate removal of the sweat patch, alone, justifies revocation regardless of the test results.

18 U.S.C. § 3583(d) (emphasis added). Sweat patch testing is considered to be "of equivalent accuracy" under § 3583(d), "is authorized by the Administrative Office of the United States Courts," and is cleared by the Food and Drug Administration, an agency of the United States Department of Health and Human Services. Meyer, 483 F.3d at 869. Here, Thomas's own failure to provide multiple urine samples prompted the probation office to use sweat patch testing, an often-employed alternative to urine testing.

Additionally, the district court made a "case-by-case" determination as to the results of Thomas's sweat patch test. See id. The court reviewed testimony from Dr. Kadehjian, heard from the officers who applied and removed the first sweat patch, analyzed the lab reports, listened to Thomas's defense, and considered his drug-related supervised release violations and criminal history. The district court did not, as Thomas contends, "blindly rely on sweat patch test results."

Second, Thomas argues his conduct is consistent with the non-use of drugs, such as maintaining a job while on supervised release, paying for an inconclusive drug test to disprove the results of the sweat patch test, and having no prior history of methamphetamine use. Therefore, he argues, we should override the court's finding as to the positive sweat patch result. The record indicates the district court carefully considered the factors and ultimately rejected this argument. We find no clear error in the district court's findings.

Third, and for the first time on appeal, Thomas challenges the initial special condition requiring drug testing and treatment "as directed by the probation officer" as well the modification made to the special condition on revocation requiring Thomas to "complete a program of testing and treatment for substance abuse" without mention of a probation officer. As this objection is raised for the first time on appeal, we review the special condition for plain error. See United States v. Fenner, 600 F.3d 1014, 1026 (8th Cir. 2010). Here, the district court acted well within the law and its discretion to include a special condition mandating Thomas's participation in a substance-abuse program, which includes testing and treatment. See United States v.

Cooper, 171 F.3d 582, 587 (8th Cir. 1999) (citing U.S.S.G. § 5D1.3(d)(4)). Additionally, as a part of the substance-abuse program, the district court can delegate "limited authority to non judicial officials . . . so long as the delegating judicial officer retains and exercises ultimate responsibility." United States v. Mickelson, 433 F.3d 1050, 1056 (8th Cir. 2006). The record indicates a working relationship between the district court and the U.S. Probation Office on Thomas's treatment and related testing, with the district court retaining the ultimate responsibility. Thus, we find no plain error in the delegation of authority in the special condition.

Ultimately, the district court did not abuse its discretion when it found, by a preponderance of the evidence, with or without the positive methamphetamine D result, Thomas violated several conditions of his supervised release. Thomas's revocation sentence is within the guideline range, and we therefore presume the sentence to be reasonable. See United States v. Petreikis, 551 F.3d 822, 824 (8th Cir. 2009) (reviewing a revocation sentence and stating, "[a] sentence within the Guidelines range is accorded a presumption of substantive reasonableness on appeal" (quoting United States v. Perkins, 526 F.3d 1107, 1110 (8th Cir. 2008))). As the district court considered the required sentencing factors, and nothing in the record leads us to find otherwise, Thomas's sentence is reasonable and not an abuse of discretion.

Accordingly, we affirm the district court's judgment.

_____